## PENNSYLVANIA THRESHERMEN & FARMERS' MUTUAL CASUALTY INSURANCE CO. *v.* TRAVELERS INSURANCE CO.

[No. 100, September Term, 1963.]

206

*Decided December 27, 1963.*

208

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*William M. Nickerson* and *W. Hamilton Whiteford,* with whom were *Due, Whiteford, Taylor & Preston* on the brief, for appellant.

*Mathias J. DeVito,* with whom were *Michael P. Crocker* and *Piper & Marbury* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal by Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Company (Pennsylvania) from a declaratory judgment in favor of the Travelers Insurance Company (Travelers), declaring complete responsibility of Pennsylvania for the full amount of a settlement negotiated by both parties for the personal-injury claim of one Leonard F. Carnes, Jr.

Pennsylvania's insured, Dundalk Signs, Inc. (Dundalk), at the time of Carnes' injury, was principally engaged in sign painting and the painting and lettering of vehicles. Joseph W. Wolf was its president, chairman of its board of directors, owner of 50% of its stock and the active head in running its business.

Prior to the date of the accident which gave rise to Carnes' claim, Chester J. Bartko, Travelers' insured and an occasional customer of Dundalk, delivered his bus to Dundalk for some painting and lettering work. Dundalk usually closed at noon on Saturdays. However, upon the Saturday when Carnes was injured, Bartko phoned Wolf and asked if the bus were finished, and was advised that some lettering remained to be done. Bartko stated that he needed the bus that day so as to have it available for Monday, and Wolf thereupon told Bartko he would finish the job himself after closing hours and would wait for Bartko to come for the bus. This he did. Bartko arrived about midafternoon in his own car but without an extra driver for the bus. Bartko lived only two miles from the Dundalk shop and he asked Wolf to drive the bus to his home, promising

that he would return Wolf to the shop in his car. Upon Wolf's refusal to drive the bus, Bartko then suggested that he would drive it and that Wolf might follow him to his home in Bartko's car, after which Bartko would return Wolf to the shop, where he could pick up his own car to go home. Wolf agreed to this arrangement.

The record discloses that it was not standard practice for Dundalk to pick up and deliver the vehicles it had painted, although it had done so occasionally for other customers. In short, whenever this service was requested it was performed free of charge even though not considered a part of Dundalk's normal business and even though it involved an additional expense to Dundalk to send out an employee for this purpose.

While driving Bartko's car and preparing to turn into his driveway, Wolf collided with Carnes. At this time, Bartko had an insurance policy upon his car with Travelers. The pertinent part thereof in relation to the case at bar is an exclusionary clause therein. It reads, in part, as follows:

> "III. Definition of Insured.
>
> (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. The insurance with respect to any person or organization other than the named insured or such spouse does not apply:
>
> "(1) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, * * * with respect to any accident arising out of the operation thereof * * *."

After the collision, Carnes filed suit to recover for his injuries and named Dundalk, Bartko and Wolf as defendants. Before trial, Travelers and Pennsylvania mutually agreed to a

settlement figure of $10,800 with releases to all defendants. This sum was accepted by Carnes under a stipulation between Travelers and Pennsylvania that each would advance $5,400 to consummate the settlement, but that neither insurer would thereby waive any defense in its claim of non-coverage, nor thereby admit liability for damages arising out of the accident. It was further agreed that the controversy over insurance coverage and liability should be resolved by litigation. The lower court found that the Travelers policy, because of the repair shop exclusion, did not provide Wolf with insurance coverage, but that the Pennsylvania policy did provide such coverage, and accordingly ordered reimbursement by Pennsylvania to Travelers in the amount of $5,400.

At the time of the accident, Dundalk had a policy with Pennsylvania. Pennsylvania agreed to pay on behalf of the "insured" all sums which the insured shall become legally obligated to pay as damages for bodily injuries to any person "caused by accident and arising out of the hazards hereinafter defined." Thereafter, the policy contains the following pertinent provisions:

"Definition of Hazards"

\* \* \* \* \* \*

"Division 2 — Premises — Operations — Automobiles Not Owned or Hired

"The ownership, maintenance or use of the premises for the purpose of an automobile repair shop \* \* \*, and all operations necessary or incidental thereto; and the use in connection with the above defined operations of any automobile not owned or hired by the named insured \* \* \*.

\* \* \* \* \* \*

"III Definition of Insured

"With respect to the insurance under coverages A, B, and D the unqualified word 'insured' includes the named insured and also includes (1) any partner, employee, director or stockholder thereof, while acting within the scope of his duties as such, and any person or organization having a financial interest in the busi-

ness of the named insured covered by this policy
* * *."

It is conceded that the business of Dundalk is such that it is an "automobile repair shop" under both policies.

Pennsylvania contends that although Wolf was driving Bartko's car, this was not a "use [of an automobile not owned or hired by the named insured] in connection with the * * * operations" of Dundalk, but was merely a favor, a gratuitous undertaking, or an accommodation. In other words, Wolf was merely acting as Bartko's agent, which rendered Travelers responsible, but not it; and, in any event, Wolf was not driving a vehicle upon which Dundalk had worked, so as to bring the vehicle within the coverage of its garage policy.

We shall consider Pennsylvania's arguments in the reverse order that they are presented in its brief. It asserts, as indicated above, that at the time of the accident, the operation of the Bartko automobile "was not in connection with the question of [the] garage business, but was * * * entirely outside of the scope of coverage of the garage policy."

We have been cited no case, and we have found none, wherein this Court has been called upon to construe the specific, pertinent language used in Pennsylvania's policy under similar circumstances to those in the case *sub judice*. However, in interpreting insurance contracts where there is no ambiguity, words are to be given their customary and normal meanings. *U.S. F. & G. v. National Paving Co.*, 228 Md. 40, 178 A. 2d 872; *Haynes v. American Casualty Co.*, 228 Md. 394, 179 A. 2d 900.

It is obvious that the automobile driven by Wolf was "not owned or hired by the named insured," therefore, in order to determine his coverage, *vel non,* under the garage policy, we need only decide whether its use was "in connection with the above defined operations," namely, "the ownership, maintenance or use of the premises for the purpose of an automobile repair shop, * * * *and all operations necessary or incidental thereto* * * *."* (Emphasis ours.) In construing this and similar language in insurance contracts such as "any accident arising out of the operation" of a repair shop (the language used in Trav-

elers' policy), the Courts have been reluctant to attempt to set forth a hard and fast definition thereof, preferring to base their decisions upon the facts and circumstances of each particular case, in which due consideration is given to such factors as the nature of the transaction, its connection with the business, and whether it is a natural and/or necessary incident of the operation thereof, though not necessarily foreseen or expected. *Allen v. Travelers Indemnity Co.*, 187 A. 512 (Vt.); *Ocean Accident & Guarantee Corporation v. Blackstock, Ltd.*, 181 S. E. 364 (Va.); *Phoenix Assur. Co. v. Ocean Acc. & Guar. Corp., Ltd.*, 357 P. 2d 642 (Colo.). Compare *U.S. F. & G. v. National Paving Co., supra.*[1]

In disposing of the particular question under discussion, Judge Jones stated: "The remaining salient point is whether the use of the automobile was in connection with Wolf's operation of the repair shop. It is found that it was. Dundalk Signs had no rule or policy prohibiting the delivery of vehicles to customers, it carried insurance to cover this very thing, and the fact that this service was infrequently performed is not a criterion to be considered. The fact is that in this particular instance the service was performed for the customer and even though Wolf may have considered it merely a favor or an accommodation, it was nonetheless a service arising directly from the work which he had performed for the customer." We agree. Wolf would not have been driving Bartko's car and the acci-

---

1. For other cases involving the pick up and delivery of customers' cars by owners or employees of garages or repair shops where the accidents were found to have arisen from the operation thereof, see Brower v. Employers' Liability Assur. Co., 177 A. 826 (Pa.); Ederer v. Milwaukee Automobile Ins. Co., Limited Mut., 265 N. W. 694 (Wisc.); Nyman v. Monteleone-Iberville Garage, 30 So. 2d 123 (La.); Clostio's Heirs v. Sinclair Refining Co., 36 So. 2d 283 (La.).

For cases holding the garage employee or owner not to have been involved in an "accident arising out of the operation" of the garage because of the factual situations, see Barry v. Sill, 253 N. W. 14 (Minn.); Employers Mut. Cas. Co., etc., 213 F. 2d 421 (C. A. 8); Provident Insurance Co. of N. Y. v. Allstate Ins. Co., 227 N. Y. S. 2d 226 (Sup. Ct. N. Y. County); Coffey v. Gayton, 4 A. 2d 97 (Me.).

dent would not have occurred had not Bartko's bus been painted by Dundalk. The use of the car was related in time to the job done for Bartko, as Wolf was still at work when he was requested to render the service to Bartko, and he would not have been through work until he was brought back to Dundalk's shop. The relationship between Wolf's use of the car and Dundalk's business was clearly sufficient, we think, to render the use of the car an operation "necessary or incidental" to the maintenance of the repair shop. Consequently, we hold that Wolf was insured under Pennsylvania's policy at the time of the accident.

What we have said above concerning the car's use by Wolf applies also to the exclusionary clause in Travelers' policy, unless Wolf was insured under that policy despite the exclusionary clause. Pennsylvania argues that the clause violates the public policy of this State. It cites the Code (1957), Article 66½, § 131 (a) (3), which states: "It [a policy of insurance offered as proof of financial responsibility] shall extend to insure any person using or legally responsible for the use of any motor vehicle described in said policy, when such use is with the permission of the insured person named in the said policy." Then Pennsylvania refers to *Wildman v. Government Employees' Ins. Co.,* 307 P. 2d 359 (Cal.), wherein the Court held that a policy which insured only the named insurer and his family to be against the public policy of that state, since it failed to comply with a statute requiring all policies of insurance issued on motor vehicles in California to cover all persons using the automobile with permission of the named insured. The distinguishing factor between our statute and the California law is that our statute applies only to policies issued as proof to the Commissioner of Motor Vehicles of the insured's financial responsibility under the Motor Vehicle Responsibility Law, Code (1957), Article 66½, § 116 *et seq.* These policies are required to be issued only under certain circumstances, not applicable here. Exclusionary clauses, such as we have under consideration, have generally been held reasonable and valid, and have been enforced by the Courts. *Tondi v. Fidelity & Casualty Co.,* 156 Md. 684, 145 A. 182 (decided before the enactment of § 131, above) ; 7 Appleman, *Insurance Law and Practice,* p. 342,

and cases therein cited. Compare the Annotation in 47 A.L.R. 2d 564. We hold that the exclusionary clause in Travelers' policy does not violate the public policy of this State.

This brings us to the final phase of the case. Pennsylvania says that coverage was afforded under Travelers' policy notwithstanding the exclusionary clause. It argues that Bartko sought the services of Wolf and gave him express permission to drive the car, and then states, "the fact of such select permission alone has been held to prevent the operation of a garage repair exclusionary clause in the owner's policy," citing and quoting at length from the case of *Paine v. Finkler Motor Car Co.*, 264 N. W. 477 (Wisc.). The appellant, apparently, has misconstrued the holding of the Court in that case. There, a policy containing an exclusionary clause was issued to a car owner, whose wife gave permission to drive the car to an employee of a garage, who had been selected by her. The Wisconsin Court held that the driver of the car was *excluded* as an insured by reason of the exclusionary clause. Similar rulings were made in the cases of *Ederer v. Milwaukee Auto. Ins. Co.*, 265 N. W. 694 (Wisc.) and *Brower v. Employer's Liability Assur. Co.*, 177 A. 826 (Pa.), both cited by appellants.[2]

The case of *Asnis v. Bankers Indemnity Ins. Co.*, 164 A. 307 (N.J.) cited by the appellant, is not in point. The policy provisions were different from those involved in the case at bar. In addition, the decision therein has been criticized by Mr. Appleman, 7 Appleman, *op. cit.*, at page 345, who states, after his criticism thereof, that since *Asnis* New Jersey has followed "a more reasonable rule," citing two later cases in that jurisdiction.

Appellant also cites *Dixie Automobile Ins. Corp. v. Mason*, 29 CCH Auto. Cases 2d 370 (Dist. Ct. of App., Fla.). In that case, an exclusionary clause identical with the one involved herein was construed. Dixie had issued its policy to the car

---

2. For additional cases that rejected appellant's argument here, see those in the first part of footnote 1, and Ocean Accident and Guarantee Corporation v. Blackstock, supra; and Canadian Indemnity Co. v. The Western National Ins. Co., 286 F. 2d 532 (Cal.).

owner, Mason. While the car was being driven by the proprietor of a repair shop, who had the owner's permission to drive it, it was involved in an accident with one Ernest Joseph. Joseph brought suit against Mason and the proprietor of the repair shop. Dixie disclaimed liability, and requested declaratory relief. The Court held that the beginning of the exclusionary clause, wherein it is stated "the insurance with respect to any person or organization *other than the named insured or such spouse* (italics ours) does not apply" renders the policy "inapplicable only with respect to coverage for and on behalf of any person, organization, or any agent or employee thereof, operating any of the stipulated businesses * * *," but that the named insured and her spouse were "specifically exempt[ed] from the exclusionary clause." Hence, the car owner, as the named insured, was insured under Dixie's policy, but the proprietor of the repair shop was not. We do not reach the question in the instant case as to whether Bartko was covered by his Travelers' policy at the time of the accident, and we leave it open.

Although the original suit was brought by Carnes against Bartko, Dundalk and Wolf, the claims against Bartko and Dundalk were predicated not upon their active negligence, but upon their vicarious, or imputed, liability for Wolf's negligent actions under the doctrine of *respondeat superior*. Therefore, in the event of a finding of liability on their part, they would have a right of action for indemnity against Wolf for the damages suffered by them. *C. & O. C. Co. v. County Comm'rs,* 57 Md. 201. Since we have held above that Wolf was covered by Pennsylvania's policy and not by Travelers', Pennsylvania's policy must be looked to for payment of the damages done by Wolf, regardless of whether either of the policies covered Dundalk or Bartko for their vicarious liability, and regardless of the provisions in Pennsylvania's policy that this insurance shall be excess insurance over any other valid and collectible insurance. *Maryland Cas. Co. v. Employers Mut. Liability Ins. Co.,* 208 F. 2d 731 (C.A. 2) ; *Canadian Indemnity Co. v. United States F. & G. Co.,* 213 F. 2d 658 (C.A. 9) ; *Pacific Employers Ins. Co. v. Hartford Acc. & Ind. Co.,* 228 F. 2d 365, (C.A. 9)

cert. den. 352 U. S. 826; *Travelers Insurance Co. v. General Casualty Co.,* 187 F. Supp. 234 (D.C., Ida.).

We find no substantial merit in the suggestion made by the appellant that the exclusionary clause in Travelers' policy was inapplicable because the car involved in the accident was not the one worked upon by Dundalk. *Aetna Casualty & Surety Co. v. Buckeye Union Casualty Co.,* 105 N. E. 2d 568 (Ohio); *Allstate Insurance Co. v. Urban,* 146 N. E. 2d 387 (Ill. App.).

From what has been said above, the judgment will be affirmed.

> *Judgment affirmed. Costs to be paid ½ by appellant and ½ by appellee.*