86 N.J. Super. 462 (1965)
207 A.2d 207
VITO CAPECE, PLAINTIFF,
v.
ALLSTATE INSURANCE COMPANY, A CORPORATION OF ILLINOIS, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A CORPORATION OF ILLINOIS, AND UNITED STATES FIDELITY AND GUARANTEE CO., A CORPORATION OF MARYLAND, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 3, 1965.
*466 Mr. John S. Bender for third-party plaintiff Allstate Insurance Company (Messrs. Marley, Winkelried & Hillis, attorneys).
Mr. Henry H. Rubenson for third-party defendant State Farm Mutual Automobile Insurance Co. (Messrs. Oppenheim & Oppenheim, attorneys).
Mr. Allan Maitlin for defendant United States Fidelity and Guarantee Co. (Messrs. Feuerstein & Sachs, attorneys).
LABRECQUE, J.S.C.
Plaintiff Vito Capece (Capece) obtained a final judgment against one Bartholemew Giordano arising out of an accident which occurred on October 25, 1960. By its third-party complaint defendant Allstate Insurance Company (Allstate), Giordano's carrier, seeks indemnification or contribution from the third-party defendants State Farm Mutual Automobile Insurance Company (State Farm) and United States Fidelity and Guarantee Co. (U.S.F. & G.), which insured the automobile and the premises, respectively, which were involved in the accident.
Capece was the owner and operator of a service station and garage located at 30 Franklin Street, Belleville, New Jersey. On the morning of the accident, in accordance with a prior arrangement made with Capece, Mrs. Linda Magnano brought her automobile to the garage for servicing. She explained to Capece that the brakes "felt low," and he agreed to effect the necessary repairs for her. Capece was working on another car and directed her to leave her car outside. The place where she left it was near the lift. She was to check back in the afternoon to see if it was ready.
*467 Thereafter, as a preliminary to working on the car, it was necessary that it be placed upon the lift. At the request of Capece, Giordano, his brother-in-law, attempted to drive the automobile onto the lift. As he did so Capece was standing directly in front, observing and directing. During the course of the operation, apparently due to Giordano's foot's slipping off the brake and hitting the gas pedal, the car shot forward, striking Capece and pinning him against the wall.
Giordano was insured for public liability by Allstate under its so-called "Crusader" automobile policy. It covered the operation of his own and "other automobiles." He duly reported the accident to Allstate and received a letter, on November 16, 1960, advising him that the policy did not cover him for the accident in question. In July 1961 Capece instituted suit against Giordano in the Essex County Court. Giordano promptly forwarded the summons and complaint to Allstate. On August 21, 1961 Allstate declined to defend and returned them to Giordano. Giordano filed no answer, and on November 30, 1961 judgment was entered against him and in favor of Capece for $9,395 damages.
On April 10, 1962 Capece instituted suit in the Law Division against Allstate to recover the amount of the judgment. Allstate filed answer on June 7, 1962. On August 16, 1962 Allstate filed a third-party complaint against State Farm and U.S.F. & G. seeking indemnification from State Farm on the ground that it was primarily liable to pay the judgment since it insured the Magnano car, and from U.S.F. & G. on the ground that it was liable by reason of its coverage of the operations of the Capece service station, including the operation of customers' cars, at the time of the accident.
A motion for summary judgment in favor of plaintiff and against Allstate was thereafter made and granted. The judgment has since been paid by Allstate. The undetermined issues posed by the third-party complaint were the subject of a pretrial conference, the order being dated October 8, 1963. In the order Allstate, in substance, contended that, by the terms of their respective policies, the third-party defendants *468 were primarily liable to pay the amount of the Capece judgment. State Farm, while admitting issuance of the policy, denied Giordano's agency or his authority to operate the Magnano car and denied receipt of notice of suit or the forwarding of suit papers, conditions precedent to its liability. State Farm also pleaded estoppel as against Allstate by reason of Allstate's failure to notify it of the suit or to forward the suit papers to it so that it could defend. As an additional defense, it set up lack of cooperation by the insured. U.S.F. & G. denied coverage and set up lack of notice of the accident or of the suit, and failure to forward suit papers, as a bar to any recovery against it. Additional factual and legal contentions of the parties will be referred to hereafter.
All of the parties stipulated that the matter should be determined by the court without a jury, and proofs were submitted over a four-day period.
Based upon the evidence adduced, Allstate now contends that State Farm, as insurer of the car involved, is primarily liable for the injuries sustained by Capece, as is also U.S.F. & G. which covered the operation of the car while in the possession of Capece at his service station. As to the failure to give notice of suit or to forward suit papers, Allstate asserts that both third-party defendants had unequivocably disclaimed coverage, thus eliminating the necessity for the giving of notice. State Farm, while admitting that in January 1961 it denied coverage to Capece for his bodily injuries or medical payments on the ground that it did not cover Giordano's operation of the car, contends that its liability to Capece on behalf of Giordano did not come within the terms of the policy. U.S.F. & G. admits that on October 4, 1961 it disclaimed liability for medical payments to Capece, but asserts that the evidence establishes that it never took a stand as to its liability on behalf of Giordano for the bodily injuries sustained by Capece. Both State Farm and U.S.F. & G. assert that neither Allstate nor Giordano had knowledge of their alleged disclaimer at the time of the failure to give them notice of suit and to forward them the suit papers. In *469 addition, U.S.F. & G. contends that the proofs show that the accident was not reported to it, as required by the policy terms, until September 1962, which was long after Capece had obtained his judgment against Giordano, and after the filing of the third-party complaint against it.
Allstate's policy contained an "other insurance clause" which read as follows:

"IF THERE IS OTHER INSURANCE
Allstate shall not be liable under this part 1 for a greater proportion of any loss than the applicable limit of liability stated on the supplement page bears to the total applicable limit of liability of all collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or a non-owned automobile, shall be excess insurance over any other collectible insurance."
It urges that since the automobile which Giordano was driving was not owned by him, and since he was an additional insured under the omnibus clause of the policies issued by State Farm and U.S.F. & G., its coverage may not be resorted to until the coverage of State Farm and U.S.F. & G. has been exhausted. Alternatively, if Allstate's coverage is not determined to be excess, State Farm and U.S.F. & G. should be required to contribute pro rata to payment of the judgment.
Allstate's policy contained a subrogation clause. In effect, it seeks recovery as subrogee of Giordano and asserts such claim as he would have under the policy. It is also subject to such defenses as State Farm and U.S.F. & G. may assert against Giordano or it. It stands in Giordano's shoes and its rights can rise no higher than his. N.J. Asphalt & Paving Co., Inc. v. Mutual Boiler Ins. Co., 19 N.J. Super. 445, 448 (Law Div. 1952); Annotation, "Right to subrogation, as against primary insurer, of liability insurer providing secondary coverage," 31 A.L.R.2d 1324. Cf. Standard Accident Insurance Co. v. Pellecchia, 15 N.J. 162 (1954); Maryland Casualty Co. v. New Jersey Manufacturers Casualty Insurance Co., 48 N.J. Super. 314 *470 (App. Div. 1958). Unless Giordano could have recovered against one or both of the third-party defendants, Allstate cannot recover.
We now turn to a consideration of the liability of the respective third-parties defendant.

AS TO STATE FARM
State Farm's policy insured Mrs. Magnano against liability for bodily injury and property damage. By its terms State Farm became obligated:
"To pay all damages which the insured shall become legally obligated to pay because of
(A) bodily injury sustained by other persons * * * caused by accident arising out of the ownership, maintenance or use, * * * of the owned automobile."
State Farm also contracted to defend any suit against the insured and to pay any costs taxed or interest on any judgment against the insured. It also agreed to pay reasonable medical expenses incurred within one year from the date of the accident:
"To or for any other person [than the named insured and each relation] who sustains bodily injury, caused by accident, while occupying or through being struck by the owned automobile, provided said automobile is being used by an insured."
Under the policy, coverage was extended to the named insured, to his relatives and to:
"(3) any other person while using the owned automobile, provided the actual use of such automobile is with the permission of the named insured, * * *.
(4) Under coverages A and B (Bodily Injury and Property Damage Liability) any person or organization legally responsible for the use thereof by an insured * * *."
In compliance with the policy requirements, State Farm received timely notice of the accident from Mrs. Magnano and, during the course of its investigation, interviewed Giordano. *471 On December 21, 1960, it wrote Capece, also sending a copy of the letter to its insured Mrs. Magnano. After referring to the accident and Giordano's operation of the car, the letter stated that:
"We * * * unfortunately will not be able to extend coverage to you under either the bodily injury section of the policy, because the car was being used in what is defined in the policy as the automobile business at the time of the accident, and for the further reason that the car was not being operated by an insured, and therefore we would be unable to extend medical payments coverage to you for this accident.
We wish to take this opportunity to inform you that we unfortunately have to disclaim coverage in the matter, both as to liability and for medical payments coverage, for the simple reason that under the interpretation of the policy there is no way that we can extend coverage to you. We therefore must respectfully refuse to make any payment under any of the coverages on the policy on your behalf for the reasons above stated, and for any other reason which may have existed or might exist in the future." (Emphasis added)
On January 18, 1961 State Farm wrote to its insured, Mrs. Magnano, with a copy to Giordano, advising as follows:
"Under your policy number 150-495-F28-30 there is no coverage to Mr. Capece because of the fact that Mr. Giordano who was operating your car at the time of the accident was not a permissive user of the car, and because of the fact that there is an exclusion in the policy which removes bodily injury coverage for any other persons driving your car except yourself when the car is used in the automobile business.

* * * * * * * *
Mr. Capece has been informed of the decision of our claim committee and we are now placing you on formal notice of this fact as well as Mr. Giordano.

* * * * * * * *
If there is any question in your mind concerning the above matter, don't hesitate to call me at Prescott 3-4902 but this letter is designed to serve notice upon you that there is no coverage under your policy for Mr. Giordano because of the above described exclusion and definition of insured and for any other reason which may have existed prior to, during or after this accident." (Emphasis added)
In the same letter State Farm agreed to defend any action brought against Mrs. Magnano, and directed her to give it *472 notice in the event that suit should be instituted. She was never sued.
When, in July 1961, Giordano was served with suit papers, he forwarded them to Allstate, even though it had previously advised him that its policy did not cover the accident. Allstate returned the suit papers with a letter dated August 21, 1961, to the effect that:
"On November 16, 1960 we advised you that your policy with us does not cover you for your accident of October 25, 1960. Exclusion 4 of Part 1 of your Crusader Policy provides that the coverage does not apply to a non-owned automobile while used in an automobile business by the insured.
In view of said exclusion, I am returning the enclosed summons and complaint which you forwarded to us. Since we do not cover this accident, I suggest that you consult your personal attorney so that the necessary legal action may be taken on your behalf." (Emphasis added)
Giordano thus was never advised to forward the suit papers to State Farm or to U.S.F. & G., and never did so. There was no further communication with State Farm on behalf of Allstate or Giordano until the filing of the third-party complaint. As noted, Allstate urges that none was necessary in view of State Farm's unqualified denial of liability.
The conclusion is inescapable, and the court finds, that Giordano was operating the automobile with the implied permission of Mrs. Magnano, the named assured. The omnibus clause referred to the "use" of the automobile, not its operation. Indemnity Ins. Co., etc. v. Metropolitan Cas. Ins. Co. of N.Y., 33 N.J. 507 (1960). It was delivered to Capece with the intention that the necessary repairs and adjustments would be made. It was left outside the garage working area. This implied authorization to move it to the place where the work was to be performed and to place it on the lift if this was necessary for the doing of the work. Capece could have moved it himself or delegated another, for whom he would be responsible, to do so. Accordingly, Giordano, the man whom Capece authorized to move it, qualified as an additional insured under State Farm's policy. *473 Baesler v. Globe Indemnity Co., 33 N.J. 148, 152 (1960); Costanzo v. Pennsylvania Threshermen, etc., Ins. Co., 30 N.J. 262 (1959); Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488, 496 (1960); Small v. Schuncke, 42 N.J. 407 (1964).
An additional insured under a policy of insurance is required to comply with the conditions of the policy in the same manner as the named insured. Costanzo v. Pennsylvania Threshermen, etc., Ins. Co., supra, at pp. 271-272. Thus, Giordano was required to give written notice of the accident as soon as practicable and immediately forward to State Farm every demand, notice, summons or other process received by him. Whittle v. Associated Indemnity Corp., 130 N.J.L. 576 (E. & A. 1943); Bankers Indemnity Ins. Co. v. A.E.A. Co., Inc., 32 N.J. Super. 471 (App. Div. 1954). It is asserted that he did neither. But State Farm received timely written notice of the accident from Mrs. Magnano. In it she revealed Giordano as the driver of the car. Giordano was then interviewed by State Farm's representative. Prior to the interview, he had no knowledge that State Farm covered the Magnano car. In view of these facts, his failure personally to give written notice of the accident does not bar State Farm's liability under the policy. Costanzo v. Pennsylvania Threshermen, etc., Ins. Co., supra; see also Indemnity Ins. Co. of North America v. Forrest, 44 F.2d 465 (9 Cir. 1930). Additionally, since neither of its letters mentioned above referred to the failure of Giordano to give such notice as a ground for denying coverage, such notice was waived. Mariani v. Bender, 85 N.J. Super. 490, 499 (App. Div. 1964); cf. Rosenberg v. Maryland Casualty Co., 3 N.J. Misc. 1132, 130 A. 726 (Sup. Ct. 1925), affirmed 102 N.J.L. 724 (E. & A. 1926); Apfelbaum v. Prudential Ins. Co. of America, 12 N.J. Misc. 62, 169 A. 677 (Cir. Ct. 1933).
However, the Capece suit papers were never forwarded to State Farm, and it never had notice of the pendency of the suit. Unless legal justification for the omission *474 to fulfill this condition precedent has been established, Giordano, and therefore Allstate, would be precluded from maintaining an action against State Farm arising out of the accident in question. Whittle v. Associated Indemnity Corp., supra; Weller v. Atlantic Casualty Ins. Co., 128 N.J.L. 414 (Sup. Ct. 1942); Kindervater v. Motorists Casualty Ins. Co., 120 N.J.L. 373 (E. & A. 1938). See Annotation, "Liability Insurance: clause with respect to notice of accident or claim, etc., or with respect to forwarding suit papers," 18 A.L.R.2d, at p. 443, et seq. (1951); compare Yannuzzi v. U.S. Casualty Co., 19 N.J. 201 (1955); LeFelt v. Nasarow, 71 N.J. Super. 538 (Law Div. 1962), affirmed 76 N.J. Super. 576 (App. Div. 1962).
By its letters of December 1960 and January 1961 State Farm unequivocally denied liability to Capece, refused to extend the coverage of the policy to Giordano, and gave formal notice that it would not defend any suit which might be brought against the latter. By so doing, it waived notice of the suit or the forwarding of suit papers when the Capece suit against Giordano was filed in July 1961. Guarraia v. Metropolitan Life Ins. Co., 90 N.J.L. 682, 684 (E. & A. 1917); Radwanski v. Scottish Union & National Ins. Co., 100 N.J.L. 192, 193 (Sup. Ct. 1924); Ciccone v. Colonial Life Ins. Co., 110 N.J.L. 276, 280 (E. & A. 1932); McNamee v. Metropolitan Life Ins. Co., 137 N.J.L. 709, 713 (E. & A. 1948); cf. Evans v. Farmers' Reliance Ins. Co., 110 N.J.L. 159 (E. & A. 1932). Having determined not to pay in any case, the giving of such notice and delivery of the suit papers would have been an idle formality, a vain and useless thing. Haskell v. Eagle Indemnity Co., 108 Conn. 652, 144 A. 298 (Sup. Ct. Err. 1929). If, therefore, the policy covered Giordano's liability to Capece, State Farm, as the insurer of the automobile involved, would become primarily liable. American Surety Co. v. American Indemnity Co., 8 N.J. Super. 343 (Ch. Div. 1950); cf. Cosmopolitan Mutual Ins. Co. v. Continental Cas. Co. 28 N.J. 554 (1959). Since State Farm's insurance coverage *475 exceeded the amount of the Capece judgment, Allstate would then be entitled to full reimbursement. We turn, therefore, to consideration of whether the policy afforded such coverage to Giordano.
In disclaiming coverage, State Farm, in addition to its contention that Giordano lacked permission to use the Magnano automobile, relied upon an exclusion in the policy which removed bodily injury coverage from its terms, as to anyone but the named insured, when the car was used in the automobile business. The law is to the contrary. A customer's automobile which is left in the custody of the proprietor of a service station for servicing or repairs is not being used in the automobile business within the meaning of an exclusion clause such as the one here involved. LeFelt v. Nasarow, supra (71 N.J. Super., at p. 555). Thus, neither ground referred to afforded any basis for State Farm's denial of coverage.
State Farm urges, however, that, by virtue of another policy exclusion, it was not liable to Capece. The provision in question reads as follows:
"This insurance does not apply under: (g) coverage A(1) * * * or (2) to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured." (Emphasis added)
Specifically, it asserts that Capece, as the one to whom the car had been entrusted for repairs, was a person responsible for the use of the automobile and thus also qualified as an insured within the terms of the policy. The proofs establish that while he was not actually driving the car, he was, nevertheless, directing its operation. The very fact that he was standing in front of the lift guiding Giordano, placed him in a position to be struck by the car when Giordano lost control of it.
Allstate vigorously objects to the court's consideration of the foregoing clause in determining State Farm's liability. It urges that (1) the claimed interpretation of the clause in *476 question was not in issue, but was raised as a defense for the first time in the post-trial brief, and (2) by virtue of its disclaimer of liability hereinabove referred to, State Farm either waived reliance upon the clause or is estopped from denying coverage.
As to the first objection, the third-party complaint contained a paragraph which asserted that State Farm's policy provided liability coverage for the benefit of Capece. State Farm answered in the form of a general denial. An amended third-party complaint was thereafter filed containing a similar paragraph, numbered 7, which asserted that liability for the benefit of Capece was provided under the omnibus clause and other provisions of State Farm's policy. The answer to the amended complaint contained a specific denial of the allegations of this paragraph. In the pretrial order, the interpretation of the contract of insurance was set up as an issue. At the trial of the case the point was raised at the beginning of the presentation of plaintiff's case, and an objection to its consideration at that time was overruled by the court. It is therefore in issue before the court.
The second contention advanced by Allstate is likewise without merit. We are not dealing here with an attempt to declare a forfeiture for reasons not set forth in the letter denying liability. The question is one of policy coverage. A loss which is not within the coverage of the policy cannot be brought within it by invoking the principle of waiver. Goldberg v. Commercial Union Ins. Co. of N.Y., 78 N.J. Super. 183, 191 (App. Div. 1963), and cases cited therein. In Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114, 129 (1962), the court distinguished between waiver and estoppel and pointed out that in cases not within the coverage of the policy it was inaccurate to speak of a waiver at all, since there was nothing to waive. Here, too, if the policy did not provide coverage for the injuries sustained by Capece, waiver cannot be invoked to conjure up a new contract between the parties.
Assuming that, under proper circumstances, the defense of estoppel would be available to a party in connection *477 with a question of coverage, State Farm cannot be held liable here under that doctrine. Estoppel presupposes misleading conduct by reason of which the party invoking it is prejudiced. Merchants Indemnity Corp. v. Eggleston, supra. Here the asserted conduct is the failure to refer, in State Farm's letters of December 1960 and January 1961, to the exclusion in question as a ground for denial of coverage. We look in vain for any indication in either letter, on which Allstate could have placed reasonable reliance, that other reasons for denial of coverage would not be urged. On the contrary, both letters contained a clause stating that the denial of coverage to those named was for the reasons set forth "and for any other reason which may have existed prior to, during or after this accident." Thus, Allstate could not have been misled and I find that it was not.
Additionally, there was no prejudice or injury to Allstate by reason of the failure to mention the provision in question as an additional basis for denial of coverage. There was no change in its position in reliance thereon. See Bertrand v. Jones, 58 N.J. Super. 273, 285 (App. Div. 1959), certification denied 31 N.J. 553 (1960). The inclusion of State Farm as a party defendant in the present suit, which was started one year and seven months later, did not constitute such a change of position as would call for application of the doctrine of estoppel. Presumably, Allstate examined the policy before instituting suit. The over-all obligation of establishing that the injuries sustained by Capece came within the ambit of the policy, rested upon Allstate. The interpretation of the policy was for the court, and State Farm's letters, assuming that they came to the attention of Allstate, in no wise impaired its ability to enforce its rights under the policy. It did not pay the Capece judgment by reason of any omission by State Farm  it paid because summary judgment was entered requiring it to do so.
Accordingly, State Farm is not estopped from asserting that its policy affords no coverage for the injuries to Capece. Allstate's rights, therefore, depend upon the interpretation to *478 be accorded the policy, with particular reference to the insuring, omnibus and exclusionary clauses. As to the latter, should the word "insured" in the exclusion be construed as referring to any person involved in the accident who qualifies as an insured, or should it be restricted to the insured who is actually seeking the protection of the policy? While Capece and Giordano qualified as additional insureds, Giordano is the only one who now seeks the protection of the policy. See Maryland Casualty Co. v. New Jersey Manufacturers Casualty Insurance Co., 48 N.J. Super. 314 (App. Div. 1958). Since the point appears to be a novel one in this State, and neither Allstate nor State Farm has briefed it, they are directed to do so and to file such briefs with the court within 15 days.

As To U.S.F. & G.
U.S.F. & G. issued its garage liability policy to Capece as the named insured. The policy covered "the ownership, maintenance or use of the premises for the purpose of an automobile repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto." It also covered "the use, in connection with the above defined operations, of any automobile not owned or hired by the above named insured * * *." In the policy, coverage was extended not only to the named insured, Capece, but to any person while using an automobile covered by the policy, provided the actual use thereof was with the permission of the named insured. The policy also provided for payment of medical expenses to or for each insured who sustained bodily injury caused by accident through being struck by an automobile.
Under the terms of the policy Giordano qualified as an insured since he was operating an automobile, not owned or hired, in the performance of an operation incidental to the use of the insured premises as an automobile repair shop. As such, he was obligated, under the policy terms, to give written notice of the accident to the company, or any of its authorized agents, as soon as practicable, including particulars sufficient *479 to identify the insured and reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses. Likewise, if claim was made or suit brought against him, he was required to forward to the company immediately every demand, notice, summons or other process received by him or his representative, and to co-operate with the company thereafter. As noted above, these were conditions precedent to recovery under the terms of the policy. Figueroa v. Puter, 84 N.J. Super. 349 (App. Div. 1964); Mariani v. Bender, supra (85 N.J. Super., at p. 499); Costanzo v. Pennsylvania Threshermen, etc., Ins. Co., supra (30 N.J., at p. 271).
U.S.F. & G. denies that it received notice of either the accident or the suit. It further asserts that there was a breach of the co-operation clause by the failure of either Allstate or Giordano to forward the suit papers to it. Contrariwise, Allstate contends that notice of the accident was given by Capece and that this sufficed to cover Giordano's obligation. In addition, it contends that the further requirements of the policy were waived by U.S.F. & G.'s unqualified denial of liability.
It is undisputed that Giordano never gave written or oral notice of the accident to the company, so that it is not necessary to determine whether such notice was a sufficient compliance with the requirements of the policy or whether it was given "as soon as practicable." Miller v. Zurich Gen. Accident and Liability Ins. Co., 36 N.J. Super. 288 (App. Div. 1955); Figueroa v. Puter, supra.
The court is satisfied that the first actual knowledge that U.S.F. & G. had of the accident to Capece was in the form of a letter from his attorney, Leonard J. Felzenberg, dated July 28, 1961, making a claim for medical payments under the policy. It thereafter conducted an investigation, during the course of which it took a statement from Capece and obtained the police report of the accident. At that time it opened a "Medical Payments file." Payment of the claim was thereafter refused by letter dated October 4, 1961.
*480 The testimony of Capece, which is asserted to show earlier oral notice, is most indefinite and inconclusive. He was confined to the hospital following the accident and was not discharged until sometime thereafter. He thought that while he was in the hospital "one of the family must have called," but no proof of this was adduced. He had no recollection of speaking to anyone from U.S.F. & G. and he never phoned anyone there. He said that after he got out of the hospital he spoke to a Mr. Genovese of the insurance agency which wrote the policy and told him "what happened," but had no recollection of preparing an accident report or signing any papers. He did not know whether Genovese reported the accident to the company. During that period he gave no statement to any representative of U.S.F. & G., and no one from the company called to see him.
While there may have been some talk with Genovese regarding the accident at an indefinite time after the discharge of Capece from the hospital, if Genovese was directed to report it to U.S.F. & G., he never did so. This is confirmed by the fact that when James Genovese (not the one referred to) was produced with the agency file, it revealed only the October 4, 1961 letter from the company denying payment of medical expenses, and a postcard receipt, postmarked September 14, 1962, from U.S.F. & G. acknowledging a "claim report" (Claim No. 9 AL 34562). The latter apparently followed the transmission of the third-party complaint to the company. The medical payments claim number had been 9 AL 32919.
The Genovese Agency was then a local agent for U.S.F. & G. under an agency agreement which authorized it to solicit and submit applications for insurance and to issue and deliver policies which the company "may from time to time authorize to be issued and delivered." Capece characterized Genovese as "his agent," and James Genovese referred to Capece as one of his "brother's accounts." It is difficult to believe that Genovese would have failed to report the accident had it been reported to him. It is unnecessary to consider whether such oral notice, if given to Genovese, satisfied the requirements *481 of the policy, since proof is lacking as to what information was given to him by Capece. Notice that Capece had been hit by a customer's car while at work and was claiming medical payments would be one thing; but notice that the injuries had occurred when the car had been left with Capece for servicing and while it was being driven by Giordano in the performance of that service would be quite another matter.
I am satisfied and find that in August 1961 the company had written notice of the accident from Capece, through Felzenberg, and by reason of its investigation, was thereafter chargeable with knowledge of the happening of the accident and the participation of Giordano therein. It is unnecessary to determine whether this notice was received "as soon as practicable," since the company, by its letter of October 4, 1961, made no reference to the delay and thus may be considered as having waived it. Mariani v. Bender, supra. While the letter in question had reference to medical payments, the notice of accident requirement was common to all claims. Such being the case, the company should not be permitted to rely on Giordano's personal failure to give earlier notice as a ground for avoidance of liability, in the absence of proof that he knew at the time that he was an additional insured under the policy. Costanzo, supra (30 N.J., at p. 272). The evidence is to the contrary.
It is undisputed that no notice of suit was given U.S.F. & G., and the suit papers were not forwarded to it but to Allstate. In contrast to Giordano, Allstate had knowledge of the U.S.F. & G. policy since December 1960. Notwithstanding this, it failed to forward the papers to U.S.F. & G. but returned them to Giordano without advising him of the potential obligation of U.S.F. & G. to defend him. To the contrary, its letter left the definite impression that there was no coverage and advised Giordano to "consult your personal attorney so that the necessary legal action may be taken on your behalf."
Allstate, in view of its prior knowledge of U.S.F. & G.'s policy, may not invoke Costanzo. It contends, however, *482 that it directed Giordano to his own attorney without advising him of U.S.F. & G.'s liability because the latter's disclaimer had dispensed with the requirement of notice of suit. I am satisfied and find that there has been a failure to establish that there was such a denial of coverage as would constitute a waiver of the policy requirements in question. McNamee v. Metropolitan Life Ins. Co., supra (137 N.J.L., at p. 713); Evans v. Farmers' Reliance Ins. Co., supra (110 N.J.L., at p. 161); Cheshansky v. Merchants Fire Insurance Co., 102 N.J.L. 415 (E. & A. 1925); Rosenberg v. Maryland Casualty Co., supra (3 N.J. Misc., at p. 1133).
U.S.F. & G.'s letter of October 4, 1961 could not have constituted such a denial of liability. Its very date precludes this since, as noted above, it was on August 21, 1961 that Allstate failed to forward the suit papers to Giordano or notify him to do so. Aside from this, the company was never called upon to defend Giordano, and the letter in question made no reference to the company's liability in connection with the defense of any suit against him. It was confined solely to U.S.F. & G.'s direct obligation to Capece under its medical payments coverage. The letter does not even refer to the use of an automobile but to the accident "wherein you sustained injuries while operating your service station on the premises insured by the above noted policy." Denial of coverage was based solely upon the definition of medical payments in the insuring agreement.
Nor do I find that there was any denial of liability prior to the letter in question. While there is some intimation in the testimony that some time prior to November 12, 1960 Rosenthal, an investigator for Allstate, had visited Capece in the hospital and been told by Capece that his agent had told him that the policy did not cover him, I am inclined not to credit such testimony. On the contrary, I am satisfied that Capece, if he ever did so, did not talk to Genovese until after he had been discharged from the hospital and was back at work at his service station. Further, assuming arguendo that Genovese was authorized to act for the company, there is lack of proof as to *483 just what was told to Genovese and what he said in return. Additionally, corroboration by the Mr. Genovese in question is entirely lacking. While it was stated to the court that he was out of the State and thus unavailable as a witness, there was no proof of any attempt to take his deposition. As pointed out above, the Genovese file contained no corroboration.
While Allstate may have assumed that U.S.F. & G., like State Farm, would join it in denying coverage, I am satisfied that U.S.F. & G. never did deny liability coverage to Giordano. I am unable to reconcile Allstate's contention to the contrary with the fact that on July 6, 1962 Rosen, its claims supervisor, telephoned Morse, U.S.F. & G.'s representative, to ascertain U.S.F. & G.'s position with respect to covering the accident. Rosen, as claims supervisor in October 1960, had assigned the investigation to Rosenthal, and presumably would have been familiar with the alleged 1960 denial of liability.
If Allstate intended to hold U.S.F. & G. to the terms of its policy, it, too, was required to conform to such terms. Allstate possessed more than the ordinary layman's knowledge of the reasons underlying the requirement of notice of suit and the forwarding of suit papers. While prejudice would not be a sine qua non to a denial of recovery based upon the omission of Allstate to give the notice referred to, it is hardly to be disputed, and I find, that U.S.F. & G. was prejudiced by such omission. It had no other knowledge of the pendency of the suit. In March 1961 Felzenberg, who represented Capece, had sent a claim letter to Magnano and Giordano requesting that they turn the letter over to their insurance carriers (State Farm and Allstate), but he did not then communicate with U.S.F. & G. In July of that year, when Felzenberg wrote U.S.F. & G. concerning his client's medical payments claim, he had already instituted suit against Giordano. Yet, his letter made no mention of this fact or of U.S.F. & G.'s potential liability to defend Giordano. Giordano's default followed. Not until September of *484 the following year, when the third-party complaint was served upon it, was U.S.F. & G. made aware of the suit. It was thus deprived of the opportunity of making a timely investigation, securing witnesses, determining the extent of injuries and presenting evidence to the court in defense of the suit. This deprivation carried added significance in view of the relationship between the plaintiff, its insured, and the defendant, his brother-in-law.
By reason of its failure to give notice of the suit and to forward suit papers to U.S.F. & G., Allstate is entitled to neither indemnification nor contribution from the latter.
So that the issues may conform with the proofs, and since the matter has been argued by the parties, an order may be submitted amending the pretrial order to permit the third-party plaintiff Allstate to set up the defense of waiver and estoppel to the contention of the third-party defendant State Farm that the exclusionary clause in the latter's policy, when properly interpreted, precludes liability for the injuries sustained by Capece.