## STATE FARM MUTUAL INSURANCE COM-PANY *v.* STITELY ET AL.

[No. 308, September Term, 1967.]

*Decided November 8, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*James F. Couch* for appellant.

*William B. Whiteford,* with whom was *George D. Solter* on

the brief for appellee, Stitely. Submitted on brief by *Benjamin B. Rosenstock* for appellee, Carl S. Davis.

McWILLIAMS, J., delivered the opinion of the Court.

We are asked here to construe a policy of insurance. The language said to be ambiguous, or otherwise requiring construction, provides that "Insuring Agreement II [extending coverage to non-owned automobiles] does not apply * * * to any accident arising out of the operation of an automobile business," which is defined to mean "the business of selling, repairing, servicing, storing or parking of automobiles." The facts are simple and not in dispute.

In November 1962, Roney Motor Company of Frederick, Maryland, employed Davis as a motor mechanic. Davis owned a 1960 Valiant upon which appellant (State Farm) had issued a public liability policy, the pertinent provisions of which are set forth in the footnote.[1] On 5 November, Davis, who had

---

1. "INSURING AGREEMENT II—NON-OWNED AUTOMOBILES

"Such insurance as is afforded by this policy under coverages A, B, Division 2 of C and M, D, D-50, F, G and H with respect to the owned automobile applies to the use of a non-owned automobile by the named insured or a relative, and any other person or organization legally responsible for the use by the named insured or relative of an automobile not owned or hired by such other person or organization provided such use is with the permission of the owner or person in lawful possession of such automobile. *"Insuring Agreement II does not apply:*
"(1) *to a non-owned automobile* (a) registered in the name of the named insured or a relative, (b) hired by or furnished to the named insured or a relative for regular use, or (c) *while used in the business or occupation of such named insured or relative except a private passenger automobile operated or occupied by such named insured, relative, or by his private chauffeur or domestic servant;*
"(2) to any accident arising out of the operation of an automobile business;
"(3) under coverages C and M, unless bodily injury results from the operation of such automobile by such named insured or relative or on their behalf by a private chauffeur

been adjusting the carburetor of a customer's car, started the engine to see if it would function properly. The car moved forward, striking and injuring appellee (Stitely). More than four months later Davis received a letter, dated 21 March 1963, from Universal Underwriters Insurance Company reciting a subrogee's interest arising out of its payment of workmen's compensation to Stitely and advising Davis to report the matter to his insurer, which he did on 4 April 1963. Davis, prior to the receipt of the letter of 21 March, "had no reason or idea in the world that the accident involved in this case was something that was in any way connected with his own automobile insurance company and for that reason he made no report [to State Farm]." State Farm declined the defense of the action claiming untimely notice and no coverage. On 2 May 1966 Stitely, to his

---

or domestic servant or from the occupancy thereof by such named insured or relative."
"DEFINITIONS — INSURING AGREEMENTS I AND II
"Automobile Business—means the business of selling, repairing, servicing, storing or parking of automobiles."
"EXCLUSIONS — INSURING AGREEMENTS I AND II
*"This insurance does not apply under:*
"(a) any of the coverages (except under coverages C and M for bodily injuries to the named insured and his relatives) while the owned automobile is rented or leased to *others by the insured, used as a public or livery conveyance,* or used for carrying persons for a charge, but the transportation on a share expense basis in a private passenger automobile of friends, neighbors, fellow employees or school children shall not be deemed carrying persons for a charge;
"(b) coverages A and B, to liability assumed by the insured under any contract or agreement;
"(c) coverages A and B, *except as to the named insured, to the owned automobile while used in an automobile business,* except that coverages A and B shall apply, as excess insurance over any other collectible insurance, to a resident of the same household as the named insured, to a partnership in which such resident or the named insured is a partner, or to any partner, agent or employee of the named insured, such resident or partnership;"
(Emphases added.)

own use and the use of Universal Underwriters Insurance Company, filed a bill in the Circuit Court for Frederick County seeking a declaration that State Farm is obliged to defend Stitely's suit and to respond in damages. The trial judge, Clapp, J., declared that State Farm is obliged to offer a defense and to "respond in such damages as may be there found to the extent of and within the limitations of its policy of insurance." [2] We disagree with the result reached by Judge Clapp.

The appellee cites many cases in support of Judge Clapp's conclusion that "the exclusion as to accidents arising out of the operation of an automobile business does not apply where the named insured, an automobile mechanic, is using a non-owned private passenger automobile in his occupation with the permission of the owner or person in lawful possession of it." Those cases,[3] however, as well as others cited by Judge Clapp,[4] all involve policies in which the exclusion is based on such language as "while used [or being used] in the automobile business by the insured." [5] The language in this case embodies a concept quite different from "use in the automobile business." It proscribes coverage as to "*any* accident *arising out* of the *operation* of *an* automobile business." (Emphasis added.) There can be no doubt that Stitely sustained an accident. To argue that his accident did not arise out of the operation of the automobile business seems to us to be an exercise in futility.

Appellee, in his argument, adopts the reasoning of Judge Clapp that the exclusionary clause must be made to read "to

2. State Farm appealed the decision to this Court. Stitely (the plaintiff below) and Davis (the named insured) are the appellees, hereinafter referred to as appellee.

3. *E.g., Allstate Ins. Co. v. Skawinski,* 40 Ill. App. 2d 136, 189 N.E. 2d 365 (1963); *LeFelt v. Nasarow,* 71 N.J. Super. 538, 177 A. 2d 315, *aff'd* 76 N.J. Super. 576, 185 A. 2d 217 (1962); *Hammer v. Malkerson Motors, Inc.,* 269 Minn. 563, 132 N.W. 2d 174 (1964).

4. *E.g., Kenner v. Century Indemnity Co.,* 320 Mass. 6, 67 N.E. 2d 769 (1946); *Wendt v. Wallace,* 185 Minn. 189, 240 N. W. 470 (1932).

5. *E.g., Capece v. Allstate Ins. Co.,* 86 N.J. Super. 462, 207 A. 2d 207 (1965); *Trolio v. McLendon,* 9 Ohio St. 2d 103, 224 N.E. 2d 117 (1967); *American Fire & Cas. Co. v. Surety Indem. Co.,* 246 S.C. 220, 143 S.E. 2d 371 (1965); *McCree v. Jenning,* 55 Wash. 2d 725, 349 P. 2d 1071 (1960).

any accident arising out of *the use of the non-owned automobile in* the operation of the automobile business." (Emphasis added.) Otherwise, it is said, the preceding clause, 1 c, would be completely nullified. Both Judge Clapp and appellee seem to have assumed that under clause 1 c, which allows the insured (Davis) to use a non-owned private passenger automobile in his business or occupation as long as it is operated or occupied by him, a relative or his private chauffeur or servant, Davis had the right to use the customer's car in his business of being a motor mechanic, since the car was being operated or occupied by him. As we see it clause 2 does not nullify clause 1 c; it simply reduces by one (the automobile business) the number of businesses in which Davis could use a non-owned private passenger automobile and that, it is plain, is the office of clause 2. It is argued also that because the words "use" and "used" appear in other clauses of the policy they ought to be read into clause 2. We see nothing persuasive in that argument. It seems entirely clear to us that State Farm's purpose in inserting clause 2 was to preclude, as far as this policy is concerned, liability for *any* accident arising out of the operation of the automobile business. Had it wished to incorporate the "use in the automobile business" concept it could quite easily have used one of its other policies, for which, no doubt, a higher premium would have been demanded. *Capece v. Allstate Ins. Co.,* 86 N.J. Super. 462, 207 A. 2d 207 (1965). See note 5.

Stitely invites our attention to the two hypotheses used by Judge Clapp to shore up the notion that the language of the policy is neither plain nor unambiguous. The first, as stated by Judge Clapp, is that "if the named insured had been driving a non-owned automobile, with the permission of the owner, and not as an employee, into a garage where he was not employed, for the purpose of having it repaired, and should cause an injury through his negligent operation, it could hardly be contended that he would not be covered by the policy. Yet in a broad sense the accident would have arisen out of the operation of an automobile business." The second has the named insured colliding with an automotive service truck on its way to render assistance to a customer. It might be said that either hypothesis is incidentally tangential to the operation of the automobile business

but that either one *arises out of* the operation of the automobile business is a concept which must be rejected. It might as well be said that one kicked by a lawyer's horse has sustained an injury arising out of the practice of law. Even if it were possible to do so, no useful purpose would be served by any attempt on our part to categorize assorted factual situations either as "arising out of the operation of the automobile business" or as being merely incidentally tangential thereto. It suffices to say that Stitely's injuries were caused by an accident which arose out of the operation of the automobile business and although we so hold it must not be supposed that our holding is to be extended beyond this case or any case in which similar facts appear. It will have been observed, of course, that, when the injury occurred, both Stitely and Davis were engaged in the performance of their duties as motor mechanics, that the accident happened during working hours and on the premises of the employer, whose business, it is agreed, is the repair and servicing of automobiles, a situation significantly different from either of the hypotheses posed by Judge Clapp.

For reasons not altogether clear Stitely appears to find some comfort in *Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Travelers Ins. Co.,* 233 Md. 205, 196 A. 2d 76 (1963). While the facts in that case differ somewhat from the facts in this case, we recognized, in *Pennsylvania,* the problems involved in the construction of insurance contracts where language such as "any accident arising out of the operation of a[n automobile] repair shop" is used. There a bus belonging to Bartko had been painted in a shop owned by Wolf. Bartko, driving his own car, went to Wolf's shop to get the bus. Wolf refused to drive the bus to Bartko's home but he agreed to follow in Bartko's car if Bartko would thereafter bring him back to his shop. Wolf was insured by Pennsylvania. Bartko's policy, issued by Travelers', contained the following exclusionary clause:

> " 'The insurance with respect to any person or organization other than the named insured or such spouse does not apply:
>
> " '(1) to any person or organization, or to any agent or employee thereof, operating an automobile

sales agency, repair shop, * * * *with respect to any
accident arising out of the operation thereof* * *.' "
*Id.* at 209 (emphasis added).

Just as Wolf reached Bartko's driveway he collided with an
automobile belonging to one Carnes. In the ensuing litigation
Pennsylvania sought to establish Travelers' liability to Carnes.
The trial judge held that Travelers' exclusionary clause re-
lieved it of any obligation to provide coverage to Wolf. She
(Judge Shirley Jones) said:

> " 'The fact is that in this particular instance the ser-
> vice was performed for the customer and even though
> Wolf may have considered it merely a favor or an ac-
> comodation, it was nonetheless a service arising di-
> rectly from the work which he had performed for the
> customer.' " *Id.* at 212.

We agreed with Judge Jones and we went on to conclude that
the collision with Carnes did indeed arise out of Wolf's opera-
tion of an automobile repair shop. Judge Prescott (later Chief
Judge), said, for the Court, in respect of the problems of con-
struction:

> "In construing this [language in the Pennsylvania pol-
> icy] and similar language in insurance contracts such
> as 'any accident arising out of the operation' of a re-
> pair shop (the language used in Travelers' policy),
> the Courts have been reluctant to attempt to set forth
> a hard and fast definition thereof, preferring to base
> their decisions upon the facts and circumstances of each
> particular case, in which due consideration is given to
> such factors as the nature of the transaction, its con-
> nection with the business, and whether it is a natural
> and/or necessary incident of the operation thereof,
> though not necessarily foreseen or expected." *Id.* at
> 211-12.

In *Allen v. Travelers Indemnity Co.*, 108 Vt. 317, 187 A.
512 (1936), precisely the same language was involved. There
Allen, who operated a garage in Randolph, Vermont, repaired

a car belonging to a touring Kansan, Holmes, who was insured by Travelers. It was arranged that Allen, after completing the repairs, would deliver the car to Holmes in Pittsfield, Massachusetts. In so doing he collided with Rich. The Vermont court affirmed the holding of the trial judge that the delivery of Holmes' car by Allen "was undertaken as something connected with the operation of the business, and arising out of it" and that the exclusionary clause in Holmes' policy exonerated Travelers. *Allen* was cited by Judge Prescott in *Pennsylvania* and it (*Allen*) appears to be the source of the quotation therefrom which we have set forth above.

Judge Prescott alluded to the contrary result reached in *Employers Mut. Cas. Co. v. Federated Mut. Implement & Hardware Ins. Co.,* 213 F. 2d 421, 423 (8th Cir. 1954). The exclusionary clause of that policy is identical with that of the case at bar. Quoting with approval from *Allen*, the court agreed with the trial judge that "there was ample evidence to justify the finding that the mission upon which Mr. Ulnick was embarked at the time of the accident was a purely personal one." The case is interesting in that it provides a sort of negative support for the holdings of *Pennsylvania* and *Allen*.

It would seem to follow, we think, that if *Pennsylvania* and *Allen* have been correctly decided then the conclusion that the accident in the instant case arose out of the operation of the automobile business is both palatable and assimilable. The language of the policy is clear and unambiguous and, in the circumstances of this case, construction thereof is not required.

Having decided there is no coverage we do not reach the question of proper notice. The judgment of the trial judge will be reversed.

> *Judgment reversed.*
> *Case remanded for the entry of a
> declaration conformable to the
> views expressed in this opinion.*
> *Costs to be paid by the appellee
> Stitely.*