The WESTERN CASUALTY & SURETY COMPANY, a Corp., Plaintiff-Respondent,

v.

Mark D. VERHULST, Sr., and Mark D. Verhulst, Jr., a Minor, by Mark D. Verhulst, Sr., his Guardian Ad Litem, Defendants-Appellants,

and

Werner Wuthrich and Truck Insurance Exchange, Defendants-Respondents.

No. 55597.

Supreme Court of Missouri, Division No. 2.

Sept. 13, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 11, 1971.

Edward W. Mullen, Deacy & Deacy, Kansas City, for plaintiff-respondent.

James W. Jeans, Kansas City, for defendants-appellants.

BARRETT, Commissioner.

In May 1968 the Western Casualty & Surety Company issued its automobile liability insurance policy insuring Werner and Dorothy L. Wuthrich and their 1968 Chevrolet II Nova automobile for a period of one year. Their residence was Moberly and Mr Wuthrich's recited occupation was that of "real estate owner." As a matter of fact he was a retired farmer and the owner of some rental property in Moberly. In this action for a declaratory judgment the question is whether Western under the "use of other automobiles" provision and the circumstances of this case is obligated to defend and pay the Verhulsts for two wrongful death actions and other losses and injuries. The trial court found that at the time of the accident resulting in the deaths Mr. Wuthrich was driving an automobile, an Oldsmobile, in the excluded "automobile business" of Brian Wood and therefore the court decreed that the policy did not afford Mr. Wuthrich coverage for the accident and resulting action pending in Carroll County. Brian Wood's insurer, Truck Insurance Exchange, has paid its policy limits and the balance due from Western in the event of coverage is $35,-000.00. The Verhulsts have appealed and, as stated, the question for decision is whether upon this record Western's policy affords coverage to Mr. Wuthrich for the automobile collision in which he was involved with Mark D. Verhulst, Sr., on May 13, 1968, on Highway 24 about five miles west of Carrollton.

In brief these were the circumstances as adduced upon the trial of the declaratory judgment action: Brian Wood for the twelve years prior to 1968 had been engaged in the "used car business" in Moberly, where on Morley Street he maintained a used-car lot. His sole business, as he described it, was the purchase and sale of used automobiles. His used-car business was not confined to the city of Moberly, he carefully watched the used-car markets, particularly in St. Louis and Kansas City. Over the years, as in the instance involved here, he purchased used automobiles at the St. Louis auctions, transferred them to Kansas City and usually the following day sold them at the Kansas City auction. As to the vehicles involved here Wood had been to St. Louis and purchased two or more automobiles and returned to Moberly. To get the cars from St. Louis to Kansas City, on May 13, Wood furnished Mr. Wuthrich a used Oldsmobile bearing his dealer's tags to take Mr. and Mrs. Edwards of Cairo to St. Louis, there to pick up the other two automobiles and deliver all three vehicles to Kansas City for sale on the following day, Wednesday. Mr. Wuthrich and Mr. and Mrs. Edwards successfully made the trip from Moberly to St. Louis, obtained the two automobiles, placed Wood's dealer's tags on the automo-

biles and proceeded on their way to Kansas City where they were to leave the three automobiles and take a bus to Moberly, thus completing the day's trip. In the vicinity of Columbia one of the vehicles developed trouble, among other things they had to purchase a new battery, and finally it became apparent that they were going to be too late in arriving in Kansas City to catch the 6:30 bus for Moberly. Mr. Edwards called Wood from Columbia, explained the situation to him and Wood told Edwards to leave two of the automobiles at the Kansas City auction and to drive on to Moberly in the Oldsmobile which could then be returned to the auction for sale the following day. The two automobiles were left in Kansas City and en route to Moberly in the Oldsmobile with Mr. Wuthrich driving they were involved in a serious automobile accident with the Verhulsts.

Mr. Wuthrich, age 70, after retiring from his farm near Shelbina in 1963, moved to Moberly, where he "looked after" some real estate. He became acquainted with Wood but did not work on his used-car lot in Moberly. After describing the trip on May 13th Mr. Wuthrich described his past relationship to Wood. He said that over a period of three or four weeks he had made five or six similar trips for Wood, he recalled three trips to St. Louis in which he returned automobiles to Moberly and some to Kansas City. Wood furnished the automobiles and dealer's tags, in each instance "he give me $7 for the trip." He said, however, that he "never made any agreements at all (for pay), I just done it because it give me somehing to do and something to see. * * * Well, Mr. Wood, he called my up and asked me if I had time, I say, yes, I like to do it, see." Nevertheless Wood paid him $7.00 for each trip and furnished transportation, usually an automobile or provided a bus ticket from Kansas City to Moberly. Wood furnished gasoline and oil for the vehicles and paid for the battery in Columbia. For this particular trip Wood did not actually pay Mr. Wuthrich any money, he said, after the wreck, "No, I never expected any money." While Wood told Wuthrich and others where to go and what to do, he did not direct them as to the speed at which they were to drive. Wood, in testifying in this action, said that he "most generally paid him around seven, something like that, just whatever we felt they was worth" and, in addition "you most generally have to buy a feller's dinner." Mr. and Mrs. Edwards, as well as others, were sometimes engaged on a similar basis. As to the purpose of this particular trip and the three automobiles, Wood said, "To sell all of them, taking them all up there to sell."

The use of other automobiles provision affords coverage to the named insured who owns "a private passenger automobile covered by this policy" and "with respect to any other automobile" except (d) this insuring agreement does not apply to any automobile * * * (3) while maintained or used by any person while such person is employed or otherwise engaged in (i) the automobile business of the insured or of any other person or organization." The premium for Mr. and Mrs. Wuthrich's policy was $159.00. Without contradiction or question Western issues policies or riders for automobile dealers, including used-car dealers and driving non-owned vehicles but those coverages required an additional premium of $106.00 for the limits provided in the Wuthrich policy.

In this background the appellant Verhulsts do not question the general and auxiliary rules of construction, they contend here contrary to many of the cited cases, that this policy and the provisions involved are "plain, unambiguous terms, readily understood," that they cover the described incident and that Western can prevail "only' if the Court were to rewrite the policy." They say that Mr. Wuthrich under the plain language of the policy "never entered into any of the activities associated with the selling of automobiles," they say he was "returning home after having accompanied two others, the Edwards, who had

delivered automobiles which were to be sold two days later by someone else, Wood." And most ingeniously they argue as to Wuthrich that "His activity then at the time of the accident could best be described as being incidental to the transportation of automobiles by the Edwards who were occasionally engaged to transport automobiles for future sale by Wood." In their reply brief appellants contend that even if it could be said that an automobile business "relationship had previously existed, the delivery of the car had been thwarted and *at the time of the casualty Wuthrich was headed for home*" and at that time and that part of the trip was certainly not engaged in the business of selling automobiles.

The parties have cited and draw analogies from cases involving insuring clauses, not exclusions. The appellants have cited cases involving omnibus coverage (Insurance Co. of N. Amer. v. General Aviation, 8 Cir., 283 F.2d 590 and Greer v. Zurich Ins. Co., Mo., 441 S.W.2d 15) and other cases defining "used in the automobile business," as Goforth v. Allstate Ins. Co., 327 F.2d 637, Goforth v. Allstate Ins. Co., D.C., 220 F.Supp. 616. Incidentally, the Goforth cases have not received general approbation. See: Sanders v. Liberty Mutual Ins. Co., 5 Cir., 354 F.2d 777. And in connection with the numerous cases cited, it is important to distinguish the various clauses of the various policies as in Heaton v. State Farm Mut. Auto Ins. Co., D.C., 278 F.Supp. 725, affirmed in 4 Cir., 398 F.2d 824. Candidly, the parties have cited no cases precisely in point, that is cases involving similar factual backgrounds and identical exclusions in other automobile provisions.

 These generalities are of some force "(a)n automobile which is insured solely for private or pleasure purposes is not covered when used in the business of either the insured or his employer" (7 Appleman, Insurance, Sec. 4326, p. 185) and the purpose of a "drive other cars" provision "is to provide coverage to an insured, and others embraced by the policy provisions, for the occasional and infrequent driving of vehicles other than those insured by the policy." 7 Appleman, Insurance, Sec. 4455, p. 495. It is not necessary to demonstrate upon the facts and illustrate or indicate permissible inferences or to precisely define "automobile business." Beyond contradiction Wood was engaged in the used-car business. In some respects his business was unique, buying used automobiles in St. Louis at auction and selling them in Kansas City, on what must have been a narrow margin. In any event, it was necessary in that business to move the automobiles from one place to another, to transport them, so to speak, and the method employed by him required drivers such as Mr. and Mrs. Edwards and Mr. Wuthrich and a part of that operation, particularly on the trip involved here, was to provide some means of returning the drivers to their homes. Mr. Wuthrich may not have been engaged in the "automobile business" in the sense or degree that Wood was but his trip that day and on several other occasions was certainly a necessary and integral part of Wood's overall used-car business within the exclusionary clause of this policy. The cases, rules and analogies most persuasive are Dieckman v. Moran, Mo., 414 S.W.2d 320, Sanders v. Liberty Mutual Ins. Co., supra, State Farm Mut. Auto Ins. Co. v. Stitely, Md., 251 Md. 286, 247 A.2d 713, and Financial Indem. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co. (Fla.App.) 184 So.2d 514. In the Dieckman case the court concluded that the provisions there involved "exclude business pursuits of the insured and also would exclude 'activities therein which are ordinarily incident to non-business pursuits.'" For the reasons indicated the judgment of the circuit court declaring and denying coverage and relief under Western's policy to Mr. and Mrs. Wuthrich is affirmed.

STOCKARD, C., not sitting.

PRITCHARD, C., concurs.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

MORGAN, P. J., DONNELLY, J., and HENLEY, Alternate J., concur.

FINCH, J., not sitting.