ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff,

v.

WEST AMERICAN INSURANCE COMPANY, a wholly owned subsidiary of Ohio Casualty Company, Defendant, Third-Party Plaintiff,

v.

DELAWARE TRUST COMPANY, Third-Party Defendant.

Superior Court of Delaware,
New Castle County.

Submitted May 26, 1981.

Decided Sept. 21, 1981.

Mason E. Turner, Jr., of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for plaintiff.

Albert L. Simon, Wilmington, for defendant, third-party plaintiff.

TAYLOR, Judge.

The issue here is which insurance company is required to pay $100,000 of a judgment in the amount of $206,765.80 which was obtained by an injured motorist against Delaware Trust Company and its employees. Plaintiff St. Paul Fire and Marine Insurance Company [St. Paul] had issued two insurance policies which provided coverage for Delaware Trust Company at the time of the occurrence. One St. Paul policy was an automobile liability policy which provided $100,000 liability coverage for each person injured in an automobile accident. The other St. Paul policy provided umbrella liability coverage of $10,000,000 for claims not covered by Delaware Trust's "underlying policies of insurance".[1] Defendant West American Insurance Company [West American] had issued a motor vehicle liability policy which provided coverage for Thomas R. Smith [Smith] in the amount of $100,000 per person for bodily injury.

Insured under the St. Paul automobile liability policy are the "Named Insured," Delaware Trust Company, and

> any person [other than a partner or executive officer] while using an owned automobile or a hired automobile with permission of the Named Insured, provided his actual operation ... is within the scope of such permission ... if he is ... an employee of the Named Insured... [2]

---

1. Since it has not been contended otherwise, this analysis proceeds on the basis that the automobile involved here was not owned by Delaware Trust at the time of the collision and that Delaware Trust's only primary coverage is under the repossessed vehicle provision.

2. It is noted that the St. Paul automobile liability police does not extend to an insured "while employed in or otherwise engaged in duties in connection with an automobile business, other than an automobile business operated by the Named Insured." For purposes of the considerations herein, this policy defines "automobile business" in the same terms as the West American policy.

An endorsement attached to that policy extends the above insurance to cover any automobile "while being repossessed by [Delaware Trust], or while being maintained or used in connection with resale following such repossession," but not while the automobile is, "being used for other business purposes or for personal, pleasure, or family purposes."

The contentions made in connection with St. Paul's motion rest on the premise that St. Paul is liable unless West American is liable. Therefore, further review of the St. Paul coverage is not called for.

The West American policy, which provided automobile liability protection only for Smith and did not protect Delaware Trust, excluded liability coverage with respect

> to a non-owned automobile while maintained or used by any person while such person is employed or otherwise engaged in (1) the automobile business of the insured or of any other person or organization . . .

"Automobile business" is defined in that policy as

> the business or occupation of selling, repairing, servicing, storing or parking automobiles . . . [3]

Summarizing the above, the West American policy did not provide coverage for Smith if Smith was using this automobile while he was employed or engaged in the automobile business of Delaware Trust Company.

In order to determine whether West American is liable under its policy, it is necessary to review the factual circumstances relating to Smith's use of the automobile at the time the accident occurred. Smith was employed as Collection Manager of Delaware Trust. On May 11, 1975, Smith arranged with a prospective customer for this car to examine the car that evening with a view toward purchasing at Smith's house on Old Capital Trail. At the close of business on May 11, Smith and Ross

Iduica who was Assistant Vice President of Delaware Trust and the immediate supervisor of Smith, drove to the location where the repossessed automobile was stored, left Smith's car and, Smith, accompanied by Iudica, drove the repossessed car to Iudica's house, located approximately 1¾ miles from Smith's house, where Iudica left and Smith drove the repossessed automobile to his [Smith's] house. The prospective customer examined the car and indicated he was not interested in purchasing it. The next morning, May 12, 1975, Smith, driving the repossessed automobile, turned right on Capital Trail, heading toward Iudica's house. The collision which resulted in the $206,000 judgment occurred at the intersection of Capital Trail and Kirkwood Highway, about one mile from Smith's house. The route which Smith normally would have taken in going from Smith's house to Delaware Trust offices at 1800 Pennsylvania Avenue would have been to turn left on Capital Trail and to proceed approximately .6 of a mile to a point on Kirkwood Highway closer to the Delaware Trust office than the location where the accident occurred. According to Smith's affidavit, if the accident had not prevented him from picking up Iudica, he and Iudica would have discussed the outcome of the effort to sell the repossessed automobile. According to the affidavit of Iudica Smith's diversion from his normal travel route was not within the scope of his duties as agent of Delaware Trust and he was not acting as agent, servant or employee of Delaware Trust but did have permission of Delaware Trust to use the repossessed automobile.

It is recognized that the primary business of the Delaware Trust Company is banking. The making and collection of automobile loans is one of its business activities, and the repossession of automobiles in which it has a secured interest and the sale of these automobiles is an essential adjunct to that business. The West American definition of

---

**3.** An illuminating discussion of this type of "automobile business" insurance policy language in comparison with other "automobile business" language used in liability insurance policies is found in *Continental Nat. American Gp. v. Allied Mut. Ins. Co.*, Idaho Supr., 95 Idaho 251, 506 P.2d 478 (1973).

"automobile business" in the West American and in the St. Paul policies includes selling automobiles. Therefore, when Delaware Trust repossesses and sells automobiles it is engaged in the automobile business, and those employees who act in its behalf in performing that function are also so engaged. Delaware Trust maintains an automobile dealer's license and uses dealer's tags when operating repossessed automobiles, in recognition that this activity is "automobile business".

■ Items which are offered for sale must be exposed to prospective buyers. In the sale of automobiles it is not unusual for the salesman to take the automobile to a convenient location for examination by an interested prospective customer. In such cases, moving the automobile to a different location or the driving of the automobile by the prospective customer is a step in the selling process and is a part of the automobile business. *Commercial Standard Insurance Company v. Sanders*, Tex.Civ.App., 326 S.W.2d 298 (1959); *Caster v. Motors Insurance Corporation*, Ill.App., 28 Ill.App.2d 363, 171 N.E.2d 425 (1961); *Western Casualty & Surety Co. v. Verhulst*, Mo.Supr., 471 S.W.2d 187 (1971). In applying the phrase "automobile business" courts have generally recognized that transportation which is incidental to the conduct of such business falls within that phrase. *State Farm Mut. Auto Ins. Co. v. McAnally*, Ill.App., 49 Ill.App.3d 475, 7 Ill.Dec. 338, 364 N.E.2d 499 (1977); *Universal Underwriters Ins. Co. v. Farmers Ins. Exch.*, Ill.App., 17 Ill.App.3d 386, 308 N.E.2d 288 (1974); *West American Ins. Co. v. State Farm Mut. Auto Ins. Co.*, Wash. Supr., 80 Wash.2d 38, 491 P.2d 641 (1971); *Northern Assurance Co. v. Truck Insurance Exch.*, Mont.Supr., 151 Mont. 132, 439 P.2d 760 (1968); *Universal Underwriters Ins. Co. v. Northwestern Ins. Co.*, S.D.Ill., 306 F.Supp. 437 (1969); *Universal Underwriters Ins. Co. v. Pan American Ins. Co.*, 5 Cir., 450 F.2d 1050 (1971).

Smith's position as Collection Manager of Delaware Trust involved him in Delaware Trust's activities in repossessing and selling automobiles upon which loans had not been repaid. On the previous evening Smith had driven the repossessed automobile to his house in order for a prospective customer to examine it. There is no indication that Smith's conduct in taking the car to his home to show it to a prospective customer in the evening and to return the car the next morning was contrary to normal business practices or contrary to Delaware Trust business policies. Thus, if this accident had occurred while Smith was following a direct course from his home to Delaware Trust facilities the exclusion in the West American policy would apply because he was engaged in Delaware Trust's automobile business. *Continental Nat. American Group v. Allied Mutual Ins. Co.*, Idaho Supr., 95 Idaho 251, 506 P.2d 478 (1973).

The applicability of the West American exception turns on the location of the accident in relation to Smith's normal course to the Delaware Trust facilities and Smith's purpose in going to the accident location. The accident occurred on the same road (Kirkwood Highway) which his direct course would have used, but the accident was .6 miles farther from Wilmington than his direct course would have placed him. The policy does not require that he take the shortest route, and therefore, if he had taken the route which he did take without a definable or independent objective not related to returning the automobile the exclusion would have applied.

When Smith left his house to go to the Delaware Trust offices and ultimately to the Delaware Trust storage lot for repossessed automobiles his ultimate purpose was to return the automobile, with an intermediate purpose to pick up his supervisor, Iudica, and then to proceed to the Delaware Trust office. Both of these objectives were with Delaware Trust's (at least) implied consent. Where a vehicle is used for more than one purpose and the primary purpose falls within the "automobile business" provision and the other does not, the "automobile business" provision has been held to apply. *Wesco Insurance Company v. Velasquez*, N.M.Supr., 88 N.M. 273, 540 P.2d 203 (1975); *Western Pacific Insurance Co. v.*

*Farmers Ins. Exch.*, Wash.Supr., 69 Wash.2d 11, 416 P.2d 468 (1966); *Western Casualty & Surety Co. v. Verhulst*, supra; *Walker v. State Farm Mutual Ins. Co.*, Ill. App., 40 Ill.App.3d 463, 190 N.E.2d 121 (1963).

St. Paul contends that the "automobile business" exclusion in the West American policy should be given a narrow application because ambiguities in an insurance policy should be resolved in favor of coverage, citing *Steigler v. Insurance Company of North America*, Del.Supr., 384 A.2d 398 (1978); *Apotas v. Allstate Ins. Co.*, Del. Supr., 246 A.2d 923 (1968); *Baltimore Life Ins. Co. v. Floyd*, Del.Supr., 94 A. 515 (1915). The principle for which those cases stands is that a purchaser of insurance is entitled to have ambiguities in an insurance policy construed in a manner consistent with the reasonable expectations of the purchaser of the insurance.

It appears that the risks which are peculiar to the "automobile business" provisions constitute a separate risk category to which a separate premium rate applies in the insurance industry. *Mastercraft Lamp Co. v. Mortek*, Ill.App., 28 Ill.App.2d 273, 171 N.E.2d 427 (1961); *Commercial Standard Insurance Company v. Sanders*, supra. Because of the singularity of that area of insurance coverage there is substantial uniformity in the language which has been the subject of a substantial body of decisional law. Cf. Annotations in 71 *A.L.R.2d* 964, et seq., 47 *A.L.R.2d* 556, 165 *A.L.R.* 1471; *Continental Nat. American Group v. Allied Mutual Ins. Co.*, supra. The language must be applied in such way that the result would be just if applied as a measure of insurance coverage as well as a measure of insurance exclusion.

The issue here is whether during the interval when Smith drove toward Iudica's house Smith's use of the automobile for Delaware Trust's automobile business ceased to exist.

■ A principle known as the "minor deviation" rule has been given various applications in the field of insurance law under which minor departures from the strict con-templation of an insurance policy are treated as though they fall within the policy language. 12 *Couch on Insurance 2d* § 45:474, pp. 462–4; 6 *Blashfield's Cyclopedia of Automobile Law and Practice*, § 3946, pp. 628–634; 5 Ibid § 3030, pp. 360–67; *Appleman, Insurance Law and Practice* (Buckley Ed.) § 4370, pp. 229–236, § 4368, pp. 216–227. Minor deviations may involve deviation of purpose, deviation of route or deviation from specific instructions. Ibid. This principle has been accepted in applying an "automobile business" insurance provision. Cf. *Western Pacific Insurance Co. v. Farmers Ins. Exch.*, supra, *Western Casualty & Surety Co. v. Verhulst*, supra; *State Farm Mutual Auto Ins. Co. v. Mohan*, Ill.App., 85 Ill.App.2d 210, 228 N.E.2d 283 (1967). In applying this principle, a Court will consider the degree of deviation of purpose or distance and whether the deviation has changed or materially increased the risk from that which the insurer assumed by its policy. Ibid. I conclude that the "minor deviation" rule applies equally whether or not "automobile business" is a specification of coverage or exclusion. Therefore, the liability of West American should be determined according to that rule.

■ Turning to the application of that rule to the facts of this case, the reason for Smith's having the automobile was in connection with the sale of the repossessed automobile. The reason for his driving the automobile on this occasion was to return the repossessed automobile to the Delaware Trust Company office and ultimately to its lot. Smith was not on an independent trip unrelated to that purpose. Smith's use was with actual or implied permission of Delaware Trust. Smith's purpose was to transport an officer of Delaware Trust to his place of work. Smith's departure from the shortest route to the Delaware Trust office to the place of the collision was .6 mile, and his maximum contemplated departure was 1¾ miles. Based upon these facts, I conclude that Smith's departure from his most direct route to the Delaware Trust office was a minor deviation from the course which he would have followed if his sole

objective was returning this automobile. The fact that he intended to segment his trip by stopping at the Delaware Trust office before completing the trip to the lot where repossessed Delaware Trust automobiles were kept did not destroy the fact that the trip from where it was examined by the prospective customer to the lost was in the "automobile business" of Delaware Trust.[4]

No dispute of material fact or inference has been shown.[5] In view of the conclusion reached herein, it is not necessary to discuss other issues raised in the briefs.

Based upon the above conclusion, I find that Smith's liability for the accident in question was not covered by the West American policy. Accordingly, summary judgment will be entered in favor of defendant West American Insurance Company and against plaintiff St. Paul Fire and Marine Insurance Company.

IT IS SO ORDERED.

[4.] It is noted that the conclusion reached here is consistent with the conclusion reached by Judge Walsh in deciding a motion for summary judgment in the tort case which resulted in the judgment referred to at the outset of this opinion. Judge Walsh did not determine whether the deviation was minor or substantial because the geographical facts presented there did not permit such determination.

[5.] Cf. *Coleman v. Garrison*, Del.Supr., 349 A.2d 8 (1975); *Murphy v. Godwin*, Del.Super., 303 A.2d 668 (1973).