David HENDERSON

v.

NATIONWIDE INSURANCE
COMPANY.

No. 2010–374–Appeal.

Supreme Court of Rhode Island.

Jan. 12, 2012.

with both, but remained less-than-fully compensated for his injuries. As a result, Henderson filed an "underinsured-motorist" claim with the defendant, Nationwide Insurance Company, under the terms of his personal automobile insurance policy. Nationwide denied the claim, citing two exclusions from the policy's provisions for uninsured-motorist coverage. We are called upon to determine whether these two exclusions are repugnant to the public policy imbedded in Rhode Island law with respect to the uninsured-motorist-coverage statute. For the reasons set forth in this opinion, we hold that Nationwide's denial of coverage was both lawful and not inconsistent with public policy, and we vacate the judgment of the Superior Court.

Peter J. Comerford, Esq., Providence, for Plaintiff.

Ronald Langlois, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

David Henderson, the plaintiff, was unloading luggage from a limousine that he had driven to Logan Airport when he was struck by a car and badly injured. At the time of the accident, Henderson was a professional limousine driver employed by All Occasion Transportation, Inc., and he had just completed a trip during which he conveyed customers from Newport, Rhode Island, to Boston, Massachusetts. Henderson made a claim against the driver whose negligence occasioned his injuries, as well as against his employer's insurance company; he reached settlements

## I

### Facts and Travel

The material facts of this case are straightforward and undisputed. All Occasion Transportation employed Mr. Henderson as a professional driver. In that capacity, he worked forty or more hours per week transporting passengers to and from varied destinations. His passengers paid All Occasion a fee for his services, and in turn Henderson was compensated with a salary, in addition to any gratuities that his customers might bestow upon him. Henderson followed a regular routine with respect to his work. On any given day, he would receive a message from All Occasion's main office about an assignment and he would then report to a garage located in Cranston to pick up an assigned vehicle. All Occasion owned a fleet of automobiles, including a number of sedans, limousines, and sport utility vehicles. Depending upon the nature of the assignment, all of these vehicles were available for Henderson's use, but the main office was responsible for designating

him a particular vehicle based on the nature of the assignment for a particular day.

The accident that underlies Henderson's claim occurred on June 5, 2003.[1] On that day, the main office directed him to transport a number of customers from Newport, Rhode Island, to Logan Airport in Boston, Massachusetts. He reported to the Cranston garage, picked up his assigned limousine, and travelled to Newport to meet his passengers. After driving them to Logan Airport, and while he was unloading his passengers' luggage, another vehicle struck Henderson, injuring him severely. He subsequently settled claims against the tortfeasor as well as his employer's insurance carrier.[2] However, because he contended that his damages exceed the amounts he had received in those settlements, Henderson filed an "underinsured" motorist claim with Nationwide, his personal automobile insurance carrier.[3] Nationwide denied Henderson's claim, citing two exclusions that are contained in Mr. Henderson's policy for uninsured motorist coverage: the "for a fee" exclusion and the "regular use" exclusion. The applicable portions of his policy provide:

"Coverage does not apply to:

"1. Use of any motor vehicle by an insured to carry persons or property for a fee. Motor vehicles used in shared-expense car pools are not considered as carrying persons for a fee.

" * * *

"4. Bodily injury suffered while occupying a motor vehicle:

a) owned by; or

b) furnished for the regular use of; you or a relative, but not insured for Auto Liability coverage under this policy." [4]

After his carrier denied the claim on policy language grounds, Henderson filed suit in Superior Court, alleging that Nationwide had "unlawfully and unjustifiably" denied him coverage.[5] Eventually, Nationwide moved for summary judgment, and a hearing was held before a justice of the Superior Court on December 9, 2008. The motion justice found the policy exclusions to be "convoluted" and "difficult to understand." Nevertheless, she determined that the two relevant exclusions were "a plain attempt to vary or qualify the clear and unambiguous statutory definition of uninsured motor vehicle and the requirement that all insurance carriers offer personal protection to their insureds." She concluded that the exclusions were an "attempt to redefine or vary that which the legislature has defined as a matter of

---

1. The record and the written submissions of the parties leave us puzzled with respect to the exact date on which the accident that injured Henderson occurred. In his deposition, Henderson testified that he thought the accident occurred on June 6, 2004. In his brief, Henderson says that it occurred on June 5, 2003. Nationwide offers no date. We illuminate this discrepancy only out of our desire for accuracy; in the end, however, the date of the accident has no impact on our conclusion in this matter.

2. When he was deposed, Henderson testified that he also received workers' compensation benefits and temporary disability insurance payments.

3. The "uninsured motorist" provisions of Mr. Henderson's policy also cover damages resulting from "underinsured" drivers. Regardless of whether the tortfeasor was uninsured or underinsured, the same provisions and exclusions apply.

4. In this opinion, we refer to subsection one as the "for a fee" exclusion and to subsection four as the "regular use" exclusion.

5. As the motion justice concluded, this "is a breach of contract action at the heart of which is a coverage dispute and for which declarations concerning the policy provisions are needed."

law." Therefore, she ruled that the exclusions were "void on grounds of public policy." Accordingly, the motion justice denied Nationwide's motion for summary judgment.

One year later, Nationwide moved to renew its motion for summary judgment. A hearing was held on that motion on December 11, 2009, before the same justice. At the hearing, Nationwide argued that Henderson's testimony from a deposition which was conducted after the initial summary judgment hearing showed that the accident occurred while he was using a limousine to carry passengers "for a fee" and that All Occasion regularly furnished that vehicle for his use. The justice declared that she "gave Nationwide credit for that at the time of the last hearing" and that she had accepted the facts both as true and weighing in favor of the defendant, but nonetheless thought it prudent to grant the motion to renew and reconsider her ruling "[t]o the extent that [she] caught Nationwide off guard with the question of voidness or invalidity * * *." After considering Nationwide's argument, however, she came to the same conclusion, and again found that the exclusions were overbroad and that they violated public policy. Consequently, she denied Nationwide's motion for summary judgment for a second time. In light of the justice's ruling, the parties declared that Henderson's remaining damages exceeded the policy limits, and Henderson filed a motion for entry of judgment in his favor. On October 1, 2010, a judgment was entered in favor of Henderson for the policy limit of $25,000, inclusive of interest and costs. Nationwide timely appealed that judgment to this Court.

## II

### Standard of Review

We note at the outset of our analysis that Henderson did not file a cross-motion for summary judgment in this matter.[6] However, we previously have held that "[a] request for the court to dismiss a case without a trial based on the legal authorities presented sounds in summary judgment." *Kevorkian v. Glass*, 774 A.2d 22, 24 (R.I.2001). Our review of the record here reveals such "peculiar circumstances." Neither party disputed the motion justice's finding that no issues of material fact were genuinely disputed, and both parties presented exclusively legal arguments in the Superior Court. Furthermore, the record indicates that the motion justice's judgment in this matter was conclusive.

■ In light of these facts, it is our opinion that Henderson's motion for entry of final judgment was essentially a request for the motion justice to rule on the merits of the case. Accordingly, as we would on appeal from a motion for summary judgment, we review this matter *de novo*. See *Zanni v. Voccola*, 13 A.3d 1068, 1070 (R.I. 2011) (citing *Classic Entertainment & Sports, Inc. v. Pemberton*, 988 A.2d 847, 849 (R.I.2010)). In such a review, this Court applies the same standards as the motion justice, and we will affirm summary judgment "if, when viewing the evidence in the light most favorable to the nonmoving party, 'there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Trust of McManus v. McManus*, 18

---

6. We observe as well that the motion justice's ruling denying Nationwide's motion for summary judgment was interlocutory; absent "peculiar circumstances," it is not appealable to this Court. *Estate of McAlpine v. Estate of*

*McAlpine*, 120 R.I. 135, 143, 386 A.2d 179, 183 (1978); *see also Brown v. Providence Police Department*, 828 A.2d 514, 514 (R.I.2003) (mem.) ("[T]he denial of a motion for summary judgment is not an appealable order.").

A.3d 550, 552 (R.I.2011) (quoting *Lynch v. Spirit Rent–A–Car, Inc.,* 965 A.2d 417, 424 (R.I.2009)).

## III

### Analysis

■ "In interpreting the contested terms of the insurance policy, we are bound by the rules established for the construction of contracts generally." *Malo v. Aetna Casualty and Surety Co.,* 459 A.2d 954, 956 (R.I.1983) (citing *Colagiovanni v. Metropolitan Life Insurance Co.,* 57 R.I. 486, 190 A. 459 (1937)). "It is well settled * * * that when the terms of an insurance policy are found to be clear and unambiguous judicial construction is at an end." *Nationwide Mutual Insurance Co. v. Viti,* 850 A.2d 104, 106–07 (R.I.2004) (quoting *Dellagrotta v. Liberty Mutual Insurance Co.,* 639 A.2d 980, 980 (R.I.1994)). In that case, the policy's terms must be given their plain, ordinary meaning; the contract terms must then be applied as written and the parties are bound by them. *See Malo,* 459 A.2d at 956. Additionally, "[c]ontracts for uninsured-motorist coverage * * * must be construed in light of the public policy mandated by the Legislature." *DiTata v. Aetna Casualty and Surety Co.,* 542 A.2d 245, 247 (R.I.1988) (citing *Poulos v. Aetna Casualty & Surety Co.,* 119 R.I. 409, 412, 379 A.2d 362, 363 (1977)).

Rhode Island's uninsured motorist coverage statute "requires insurance carriers to provide protection for those claimants who voluntarily contract with licensed carriers for liability coverage as against uninsured operators." *DiTata,* 542 A.2d at 247 (citing *Allstate Insurance Co. v. Fusco,* 101 R.I. 350, 355–56, 223 A.2d 447, 450 (1966)); *see also* G.L.1956 § 27–7–2.1 (uninsured motorist coverage). On numer-

ous occasions, this Court has held that "[t]he purpose of enacting the uninsured-motorist coverage statute was to afford protection to the insured against 'economic loss resulting from injuries sustained by reason of the negligent operation of uninsured motor vehicles or hit-and-run motor vehicles.'" *McVicker v. Travelers Insurance Co.,* 785 A.2d 550, 553–54 (R.I.2001) (quoting *Pin Pin H. Su v. Kemper Insurance Co.,* 431 A.2d 416, 419 (R.I.1981)); *see also Aldcroft v. Fidelity and Casualty Co. of New York,* 106 R.I. 311, 318–19, 259 A.2d 408, 413–14 (1969). "This statute was premised on the concept that responsible motorists who carry liability insurance should not be uncompensated when they are without recourse against an uninsured tortfeasor." *Amica Mutual Insurance Co. v. Streicker,* 583 A.2d 550, 553 (R.I.1990). It must be borne in mind, however, that "[t]he legislative purpose of the statute was not * * * 'to guard against all economic loss,' and we have held that reasonable limitations will be imposed on the construction of the uninsured-motorist statute to 'afford[ ] insurers some financial protection' from unwarranted claims." *Ladouceur v. Hanover Insurance Co.,* 682 A.2d 467, 470 (R.I.1996) (quoting *Streicker,* 583 A.2d at 553).

■ After reviewing the policy language and this Court's precedent, we are satisfied that the "for a fee" exclusion, as applied to the circumstances of this case, is consistent with the fundamental purpose of § 27–7–2.1. As an initial consideration, it is our opinion that the language of Nationwide's "for a fee" exclusion is clear and unambiguous. The words used in that provision are all of common usage and they are not reasonably susceptible to multiple meanings; therefore, we will apply the policy language as it is written to the

facts of this case.[7] It is undisputed that at the time of the accident, Henderson was employed by All Occasion Transportation as a professional driver, that his passengers paid a fee for his services, that All Occasion paid Henderson a salary based on his assignments, and that Henderson was injured in the course of his employment. As understood in its plain, ordinary, and popular sense, it is clear that the exclusion applies to these facts.

■ Furthermore, we hold that this exclusion is consistent with the legislative purpose behind § 27–7–2.1. Although this Court has never examined the two particular provisions at issue here, we have considered a plethora of uninsured motorist policy exclusions.[8] Our prior holdings demonstrate that although public policy favors indemnification for injuries suffered by insureds at the hands of uninsured motorists, it nonetheless does not require insurance companies to provide policyholders with uninsured motorist coverage that protects them in virtually every circumstance. In *Employers' Fire Insurance Co.*, a divided court held that uninsured motorist coverage primarily follows the insured motor vehicle and is not a form of exhaustive personal protection.[9] *See Employers' Fire Insurance Co. v. Baker*, 119 R.I. 734, 741, 383 A.2d 1005, 1008–09 (1978). In that case, the plaintiff's insur-

ance company denied coverage because she was injured by an uninsured motorist while she was operating a motorcycle that she owned, but had not insured under her policy. *See id.* at 735–36, 383 A.2d at 1006. The policy in *Baker* specifically excluded coverage for injuries that occurred when the insured used a vehicle "owned by the named insured," but not included as an "insured automobile" under the policy. *See id.* at 736, 383 A.2d at 1006. We upheld this "owned but uninsured" exclusion, concluding that § 27–7–2.1 does not require insurers to cover vehicles owned by the policyholder that he or she has chosen not to insure under the policy. *See id.*, 119 R.I. at 740–41, 383 A.2d at 1008–09, *see also Murray v. Remuck*, 108 R.I. 179, 184–85, 273 A.2d 491, 494 (1971) (holding that a policy provision that excluded coverage for any insured "employed or engaged in an automobile business" was not contrary to public policy); *Dellagrotta*, 639 A.2d at 980 (reaffirming validity of "owned but not insured" exclusion).

There can be no doubt that the "for a fee" exclusion at issue here is distinguishable from those uninsured motorist coverage provisions that this Court has held to be invalid. For example, in *Aldcroft*, this Court invalidated a "set-off" clause that allowed the insurer to deduct any amount collected by an insured under workers'

---

7. Although it was in the context of liability insurance rather than uninsured motorist coverage, we note that this Court held long ago that a policy exclusion with similar language was both unambiguous and consistent with public policy. *See Laliberte v. Public Service Mutual Casualty Co.*, 69 R.I. 431, 34 A.2d 670 (1943).

8. There has been a significant amount of litigation surrounding uninsured motorist coverage in Rhode Island and other states across the country. *See* 1 Alan I. Widiss & Jeffery E. Thomas, *Uninsured and Underinsured Motorist Insurance* 14–15 (2005). Scholars suggest that the source of this litigiousness is the lack

of guidance provided by state legislatures. *See id.* at 15. Although nearly every state has made uninsured motorist insurance mandatory in a general sense, few have chosen to define the nature and extent of that mandate with much specificity. *See id.*

9. Despite our initial division, this Court has uniformly applied the rationale articulated in *Baker* in subsequent uninsured motorist cases. *See, e.g., Nationwide Mutual Insurance Co. v. Viti*, 850 A.2d 104, 107 (R.I.2004); *Dellagrotta v. Liberty Mutual Insurance Co.*, 639 A.2d 980, 980 (R.I.1994)

compensation or disability benefits from uninsured motorist benefits, resulting in coverage below the statutory minimum. *See Aldcroft*, 106 R.I. at 318–19, 259 A.2d at 413–14. In *Sentry Insurance Co. v. Castillo*, 574 A.2d 138, 140, 141 (R.I.1990), we held that "an insurance-policy provision disallowing coverage for accidents involving snowmobiles" was invalid because snowmobiles were a "motor vehicle" contemplated by the broad language of the statute. *See also Rueschemeyer v. Liberty Mutual Insurance Co.*, 673 A.2d 448, 449–51 (R.I.1996) (invalidating provision that excluded "government vehicles" from the definition of an uninsured motor vehicle). Unlike those cases, the "for a fee" exclusion before us here neither narrows the definition of "uninsured motor vehicle" nor reduces the amount of coverage to a quantity less than the statutory minimum; rather it establishes a limited and reasonable restriction that precludes coverage based on a particular use of an insured vehicle by the policyholder.

■ An insurance policy is foremost "a contract between the insured and the insurer," *Baker*, 119 R.I. at 741, 383 A.2d at 1008. In *Malo*, we held that "[n]either the terms of the statute nor the public policy expressed therein" dictate the specific terms of the contract. *Malo*, 459 A.2d at 956–57. In the controversy before us, Henderson entered into a contract with Nationwide that provided for personal automobile insurance. In our opinion, the purchaser of a *personal* automobile insurance policy cannot reasonably anticipate coverage for losses that occur in the course of his employment as a *professional* limousine driver; neither could an insurance company reasonably anticipate insuring that risk in a personal automobile insurance policy. *See Pollard v. Hartford Insurance Co.*, 583 A.2d 79, 81 (R.I.1990) (upholding geographical limitation clause for uninsured motorist coverage); *Baker*, 119 R.I. at 741, 383 A.2d at 1009 (upholding owned but uninsured exclusion because insurance company would have no "constructive knowledge" of a second vehicle under the terms of the policy). The "for a fee" exception stems from the fact that insurers base their policy premium rates on the risk that the policyholder will be injured by an uninsured motorist, and an individual using his vehicle in a commercial context is surely an increased risk. As we held in *Ladouceur*, 682 A.2d at 470, reasonable limitations on uninsured motorist coverage may be imposed to " 'afford[ ] insurers some financial protection,' " and despite the preference favoring indemnification, we cannot say that by passing § 27–7–2.1 the legislature intended otherwise.[10]

We are cognizant that the "for a fee" exclusion's language is capacious, and that broad terms at times may lend themselves to an errant interpretation that may be inconsistent with the public policy we have articulated.[11] Indeed, the record reveals

---

10. As has previously been noted, although this Court's holdings with respect to uninsured motorist coverage "may not comport with those in other jurisdictions, they represent the rulings of this Court, and there has been ample time since the enactment of G.L.1956 § 27–7–2.1 for the General Assembly to change the statute should it wish to do so." *Nationwide Mutual Insurance Co. v. Viti*, 850 A.2d 104, 108 (R.I.2004).

11. There is without question a continuum of "fees" that could fall within the scope of this exclusion, ranging from the undisputed commercial conduct at issue here to an informal, isolated instance of reimbursement for providing incidental transportation. If the exclusion were applied to circumstances that were less clearly commercial than those before us here, its application may well be questionable in light of public policy. For a cogent illustration of such an analysis, see *Buirkle v.*

that the breadth of the exclusion was the primary concern of the experienced and learned motion justice. Nevertheless, we must channel ourselves to the facts of this case; the terms of an insurance policy must be considered with reference to the specific matter before us. *See Casco Indemnity Co. v. Gonsalves*, 839 A.2d 546, 549 (R.I.2004); *see also Buirkle v. Hanover Insurance Companies*, 832 F.Supp. 469, 482 (D.Mass.1993) ("[A]n alleged ambiguity or expectation is of no consequence unless it concerns an issue relevant to [the] disposition of the case before the court."). When applied to the circumstances of this case, the "for a fee" exception is not the least bit ambiguous and does not violate public policy. At the time of the accident that caused his injuries, Henderson was a salaried, professional limousine driver transporting passengers who paid his employer a fee for his services. His use of All Occasion's limousine that day cannot reasonably be understood as anything other than the use of a motor vehicle to carry passengers "for a fee." Accordingly, any ambiguity with respect to hypothetical scenarios that are not before us bears no relevance to this Court's resolution of this dispute.[12]

### Conclusion

For the reasons stated in this opinion, we vacate the judgment of the Superior Court and remand the record in this matter to the Superior Court for entry of judgment in favor of the defendant, Nationwide Insurance Company.

*Hanover Insurance Companies*, 832 F.Supp. 469, 483 (D.Mass.1993) (describing the "zone[s] of twilight" and "zones of clarity" with respect to relevant ambiguities in insurance policies).

12. Because this matter is resolved in its entirety under the "for a fee" exception, we need not, and do not, reach the parties' arguments with respect to the "regular use" exception.