NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-449                                          Appeals Court


        RITA BORDEN  vs.  PROGRESSIVE DIRECT INSURANCE COMPANY.


                           No. 14-P-449.

        Bristol.     November 10, 2014. - May 21, 2015.

              Present:  Rubin, Brown, & Maldonado, JJ.



Insurance, Business exclusion.  Contract, Insurance.  Motor
     Vehicle, Insurance.  Practice, Civil, Summary judgment.



        Civil action commenced in the Superior Court Department on
October 9, 2012.

        The case was heard by Robert J. Kane, J., on motions for
summary judgment.


        Joseph A. Keough, Jr., for the plaintiff.
        Hillary J. Giles for the defendant.


        BROWN, J.  The single issue presented for review is whether

the "automobile business" exclusion contained in a standard

Rhode Island automobile policy applies in the circumstances of

this case as to preclude coverage.  Ruling on cross motions for

summary judgment, a judge of the Superior Court concluded that

it did, and ordered judgment to enter for the defendant,

Progressive Direct Insurance Company (Progressive).  We agree and, accordingly, affirm the judgment.[1]

To prevail on appeal, the plaintiff must convince us that there is a dispute of material fact which precludes summary judgment or that the undisputed material facts entitle her to a judgment as matter of law.  See Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).  Our review is de novo.  See Miller v. Cotter, 448 Mass. 671, 676 (2007).

1.  Facts.  The material facts necessary to decide the legal issue before us are undisputed.  In 2008, Geraldina Melo purchased a Dodge tow truck solely for the use of her boy friend, Davidson Lues Bucco.  On behalf of automobile dealerships, Bucco transported used automobiles by means of the tow truck either (1) from dealer lots to sales auctions or (2) from the auctions to dealer lots.  Bucco called his business "David's Towing."  He hired Eduardo A. Silva to assist him with the work.[2]  Whenever Silva's help was needed, someone from David's Towing would notify Silva that he was needed on a

_____

[1] As confirmed at oral argument, for purposes of summary judgment, the parties agree that Rhode Island law applies.  We cite to cases from other jurisdictions, as did the parties, for their persuasive value.

[2] At the time, Silva, the holder of a commercial driver's license, also worked full-time as a driver for CMI of Canton delivering doughnuts.

designated day.  Silva performed services for David's Towing once or twice per week, earning $100 per day.

On the date of the accident, Silva arrived at the garage used by David's Towing at 9 A.M. and parked his 2007 Nissan Altima (the vehicle insured by Progressive).  After retrieving the keys to the tow truck, the only one used in the business, he inspected it to make sure everything was in order.  At 9:55 A.M., while Silva was en route to pick up a car for delivery to a dealer, he struck a vehicle in which the plaintiff, Rita Borden, was a passenger.  As a result of the accident, the plaintiff sustained personal injuries.  Her medical bills exceeded the amount of primary insurance available through Melo's insurer.  Progressive denied the plaintiff's claim for excess coverage under Silva's personal automobile policy on the basis of its automobile business exclusion.[3]  This declaratory judgment action followed.

---

[3] The policy issued to Silva contained a broad insuring agreement requiring Progressive to "pay damages for bodily injury and property damage for which an insured person becomes legally responsible because of an accident."  The automobile business exclusion provided, in relevant part, that coverage, including the duty to defend, did not apply to "bodily injury . . . arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any auto business."  The policy defined "auto business" as "the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles" (emphasis supplied).

2. Discussion. As the plaintiff points out, the automobile business exclusion has a long history.[4] The majority of published cases that have considered the exclusion involve the surrender of the insured vehicle for use by some unknown individual in the automobile business. See, e.g., Transamerica Ins. Group v. State Farm Mut. Auto. Ins. Co., 492 F. Supp. 283, 287 (D. Nev. 1980) (parking lot attendant); Universal Underwriters Ins. Co. v. Travelers Ins. Co., 669 A.2d 45, 46 (Del. 1995) (car dealership employee). The exclusion is based on the assumption that the lack of control over the insured vehicle increases the risk to the owner's insurer. See Halley v. State Farm Mut. Auto. Ins. Co., 130 Ga. App. 258, 260 (1973). Courts have reasoned that once the automobile business assumed control over the insured vehicle, that business should bear the cost of insuring for such risks under its own liability policy. See Grisham v. Allstate Ins. Co., 128 N.M. 340, 342 (1999). We agree with the plaintiff that the facts of this case do not fit into this entrustment line of cases. However, the exclusion also has been applied in cases such as the one before us involving the insured's use of a nonowned vehicle in the course of employment. See, e.g., St. Paul Fire & Marine Ins. Co. v.

---

[4] This common exclusionary clause has taken on many forms and has generated a considerable amount of litigation. See Transamerica Ins. Group v. State Farm Mut. Auto. Ins. Co., 492 F. Supp. 283, 285 (D. Nev. 1980).

West Am. Ins. Co., 437 A.2d 165, 169-170 (Del. Super. Ct. 1981) (no coverage under bank employee's personal automobile policy where he was returning repossessed car offered for sale by bank after showing it to potential buyer); Western Cas. & Sur. Co. v. Verhulst, 471 S.W.2d 187, 188-190 (Mo. 1971) (no coverage under personal automobile policy where insured was delivering vehicle for car salesman between sales auction and used-car lot); Carney v. Erie Ins. Co., 189 W. Va. 702, 707 (1993) (no coverage under personal automobile policy of employee of automobile dealership where she was returning vehicle after showing it to potential buyer).

The plaintiff recognizes that insurance coverage follows the insured individual. To the extent that she argues Progressive had the ability to evaluate the risk presented by Silva operating a vehicle not listed on the policy, we note that, as a general rule, an insurer of a personal automobile is only expected to provide coverage for an insured's occasional or infrequent use of other vehicles. See Western Cas. & Sur. Co. v. Verhulst, supra at 190. Here, the risk posed by Silva's use of the tow truck in the course of his employment for David's Towing, we think, falls outside the range of ordinary risks contemplated by insurers of personal automobiles. See Henderson v. Nationwide Ins. Co., 35 A.3d 902, 908 (R.I. 2012) (insurance company could not reasonably anticipate that personal automobile

policy would cover losses incurred by professional limousine driver using nonowned vehicle in course of employment).

Noting that the definition of "auto business" in the Progressive policy is unambiguous and does not list the business of towing, the plaintiff contends that the exclusion is clearly inapplicable. Although we agree with the plaintiff that the policy language is unambiguous, we disagree with her analysis.[5] The words "business of . . . delivering . . . vehicles" are readily understood by any ordinary purchaser of personal automobile insurance. Delivering vehicles means bringing them from one location to another location. As the Superior Court judge noted, the delivery of a vehicle by a business may be accomplished in several ways, including through the use of a driver, a flatbed truck, a car carrier, or a tow truck. The method of transportation required for any delivery is necessarily encompassed within the expressly excluded business activity. The plaintiff provides no record evidence or authority to support her argument that for purposes of the

---

[5] The Rhode Island Supreme Court has enforced previous versions of the automobile business exclusion clause as "clear and unambiguous and requir[ing] no construction." Murray v. Remuck, 108 R.I. 179, 184 (1971) ("[The clause] excludes all insurance coverage to an insured under the policy while employed or engaged in an automobile business. . . . There is nothing in such exclusion contrary to public policy"). See Mullins v. Federal Dairy Co., 568 A.2d 759, 763 (R.I. 1990) (policy language is "clear on its face").

exclusion, a delivery is limited to an individual driving a vehicle.

The plaintiff further argues that the cases relied upon by Progressive and the motion judge as authority for summary judgment actually support her position in this litigation. See Maryland Cas. Co. v. Integrity Ins. Co., 693 F.2d 506 (5th Cir. 1982); Westfield Ins. Co. v. Aetna Life & Cas. Co., 153 Ariz. 564 (Ct. App. 1987); Mullins v. Federal Dairy Co., 568 A.2d 759 (R.I. 1990). We disagree. These cases, in which the courts found the particular automobile business exclusions inapplicable, are distinguishable on the facts or by policy language.[6] Moreover, the principles discussed in each case support the conclusion reached by the judge.

In the Mullins case, the policy definition of automobile business did not include towing or delivering. The Rhode Island Supreme Court held that the "automobile-business exclusion should only preclude coverage when the insured, at the time of the accident, is engaged in an activity in connection with one of the listed activities." Id. at 763. Where the owner of the disabled vehicle had retained the towing company solely to haul

---

[6] These cases arose in the traditional towing context in which insured, disabled vehicles were involved in accidents while under tow. The courts concluded that the towing companies were not automobile businesses within the definitions of the policies. As the plaintiff herself points out, none involved the insured individual driving a nonowned tow truck.

the vehicle and not to perform any of the activities listed in the definition of automobile business (such as repairing, servicing, or storing), the court concluded that the exclusion did not apply. Ibid.

Similarly, in a case called "particularly instructive" by the Rhode Island Supreme Court, ibid., the United States Court of Appeals for the Fifth Circuit, construing the same definition of automobile business as that at issue in Mullins, concluded that since there was no evidence that the wrecking service retained by the insured had engaged in any of the listed activities, the exclusion did not apply. See Maryland Cas. Co. v. Integrity Ins. Co., supra at 509-510. The Fifth Circuit reasoned that while the pickup and delivery of a vehicle in connection with a listed activity would fall within the exclusion, in the case before it, the service provided was limited solely to towing. See id. at 509.

The third case, Westfield Ins. Co. v. Aetna Life & Cas. Co., supra, also does not assist the plaintiff. Although the policy in Westfield Ins. Co. contained an automobile business exclusion referencing "delivery," the language of the clause differed, in material respect, from the Progressive policy.[7]

---

[7] The exclusion at issue in Westfield Ins. Co. v. Aetna Life & Cas. Co., supra at 569, stated that liability coverage would not be provided "[f]or any person while employed or otherwise engaged in the business or occupation of selling, repairing,

Applying similar reasoning as the courts in Mullins and Maryland Cas. Co., the Court of Appeals of Arizona concluded that where towing was neither a specifically listed business or occupation, nor incidental to the towing company's intention to engage in one of the listed businesses or occupations with respect to the insured vehicle, the exclusion did not apply. See Westfield Ins. Co. v. Aetna Life & Cas. Co., 153 Ariz. at 569.

Here, the specific language of the exclusion at issue, as applied to the facts, barred coverage as matter of law. The plaintiff correctly points out that the parties disputed whether Silva was engaged in a towing or an automobile delivery business at the time of the accident. If David's Towing were to be deemed a delivery business, a specifically excluded activity, see note 3, supra, coverage was precluded. Even assuming David's Towing was merely a towing company, as the plaintiff contended, under Rhode Island law, Silva was engaged in an activity (towing) in connection with the listed activity of delivering a vehicle.[8] See Mullins v. Federal Dairy Co., 568

---

servicing, storing or parking of vehicles designed for use mainly on public highways, including road testing and delivery" (emphasis supplied). In contrast, the Progressive policy more broadly excludes vehicle delivery businesses, see note 3, supra.

[8] The plaintiff's argument that Silva was not engaged in any of the excluded activities (i.e., towing or delivering) at the time of the accident is based on a distorted view of the facts. At the time of the accident, Silva was in the tow truck on his way to pick up a vehicle for delivery to a dealer; that no

A.2d at 763. Coverage was thus precluded whether David's Towing was a delivery or towing business.[9]

The reasonable expectations doctrine followed by Rhode Island courts supports the result we reach. In Henderson v. Nationwide Ins. Co., 35 A.3d at 903-904, a limousine driver, who had been seriously injured while dropping off passengers at the airport for his employer, sought underinsurance benefits under his personal automobile insurance policy. The Rhode Island Supreme Court upheld the denial of coverage, ruling that the "for a fee" exclusion in that policy was clear and unambiguous, applied to the facts of the case, and did not violate State law or public policy. See id. at 906-907. The court reasoned that "the purchaser of a personal automobile insurance policy cannot reasonably anticipate coverage for losses that occur in the course of his employment as a professional limousine driver;

---

vehicle was under tow is immaterial as matter of law. Contrast Universal Underwriters Ins. Co. v. Farmers Ins. Co. of Idaho, 108 Idaho 249, 252 (1985) (holding, as matter of law, exclusion inapplicable where at time of accident, salesperson was driving borrowed demonstrator vehicle to grocery store).

[9] The exclusion applies to the use of any vehicle "by a person while employed or engaged in any auto business." See note 3, supra. Although the issue was not raised by the parties, Silva was arguably employed or engaged in a second automobile business, i.e., the business of the car dealerships that retained David's Towing to transport vehicles between the auctions and their sales lots. In any event, we think it could be fairly determined as matter of law that Silva was engaged in the excluded business of selling vehicles. See Western Cas. & Sur. Co. v. Verhulst, 471 S.W.2d at 190.

neither could an insurance company reasonably anticipate insuring that risk in a personal automobile insurance policy." Id. at 908.

This reasoning applies with equal force here. No individual employed as a tow truck driver could reasonably expect coverage under his personal automobile insurance policy for a loss occurring in the course of his employment.

The judgment declaring that coverage was precluded under the Progressive policy is affirmed.

So ordered.